## H. L. HALL v. GRAYSON COUNTY NATIONAL BANK.

Decided June 8, 1904.

**1.—False Representations—Means of Knowledge.**

One induced by reliance on false representations to enter into a contract is not precluded from defeating its enforcement by the fact that by ordinary diligence he could have discovered their falsity before acting on them.

**2.—False Representations—Avoiding Contract.**

False representations made by a promoter of a proposed oil company held sufficient to avoid a contract to enter it by one relying thereon, though relating to previous dealing by which the property had been acquired by such promoter, and inducing action only through leading to faith in the honesty and fair dealing of such promoter in the previous transactions.

**3.—Same.**

Representations of a promoter inducing a subscription to a proposed corporation that the subscriber was to come in "on the ground floor" and on the same terms as the promoter, when the latter had secret arrangements for being protected against loss may be sufficient to avoid a contract induced thereby.

**4.—Same—Concealment.**

The promoter of a corporation is bound to act in good faith to proposed investors, and the concealment of a secret contract made by him with others under which he was bound to release the investor from his undertaking if demanded may be fraud avoiding such investor's contract to proceed with the enterprise.

**5.—Charge—Evidence.**

Evidence considered and held to authorize requested charge on failure of consideration.

Appeal from the District Court of Grayson. Tried below before Hon. J. M. Pearson.

*Moseley & Eppstein* and *Standifer & Kone,* for appellant.

*Smith & Beaty,* for appellee.

EIDSON, ASSOCIATE JUSTICE.—This action was brought by the appellee against the appellant on a promissory note. The appellant admitted the execution of the note, but asked that it be canceled on the ground that it had been obtained from him through fraud by J. W. Blake, the original payee of said note. Upon the trial it was agreed that any defense that the appellant might have against J. W. Blake should be a valid defense against the appellee.

The case was tried before a jury, which returned a verdict for appellee.

The special answer of the appellant setting up fraud in the procurement of the execution of the note is as follows:

"For special answer herein this defendant shows that the note declared upon in plaintiff's said original petition filed herein on the 2d day of September, 1902, is without consideration and that the consideration of the same has failed in whole or in part, and that the said note was procured from this defendant by the fraudulent representations of

the said J. W. Blake, the payee of said note, as is hereinafter more fully and particularly set out.

"This defendant shows that at all of the times hereinafter mentioned the said J. W. Blake was president of the Grayson County National Bank, and was a director of and the executive officer of and the general manager of said bank, and that in his capacity as president, director, executive officer and general manager he had the management and control of the affairs of said bank. That all of the facts set out in this answer were fully known to the directors of said bank, and to all of the officers thereof, and that said bank is not in good faith an innocent purchaser of said note, but that the transfer of the said note to the said bank, as shown by plaintiff's petition, was a colorable transfer only, and that the said J. W. Blake is now in fact the true owner of said note and that the transfer to the said bank was wholly without consideration and was made in the manner more fully hereinafter set out. This defendant further shows that the said note came to be executed and delivered to the said Blake under the following circumstances, to wit:

"On or about the 20th day of April, 1901, J. W. Blake entered into an agreement with a number of citizens of Sherman, Texas, composed in part of Bal Fielder, Chilt Andrews, W. P. Head and J. C. Tassey, to go to Beaumont, Texas, as their agent, for the purpose of purchasing oil lands in Jefferson County, Texas, for himself and for them jointly or in common, but that at that time this defendant was not a member of said party. That in pursuance of said agreement the said J. W. Blake departed for Beaumont, Texas, and having arrived there became the purchaser of the land referred to under the following circumstances:

"John Grant and Nat Birge had an option on some land and leases of land, and offered to sell and assign said option to the said Blake for the sum of $22,000. Whereupon the said J. W. Blake stated that he had purchasers to whom he could sell the said land for the sum of $30,000, and offered to divide the profit with the said Grant and Birge and to take the said land which had been offered to him for the sum of $22,000 and turn it over to said parties for the sum of $30,000. That in consideration of this offer, the said Grant and Birge made a counter-offer, by which they offered to sell to the said Blake for the sum of $17,000 the land which they had previously offered to sell him for the sum of $22,000, in case Blake could resell the same for $30,000, in which event the excess over the $17,000 should be divided into four parts, one of which should go to the said Grant, one of which should go to the said Birge, one to Thomas Forbes, Jr., and the other to the said J. W. Blake. It was contemplated that said land should be sold in fifteen shares for $2000 each, making $30,000. It was a part of said agreement that said profit of $13,000 should be made up and divided as follows: one share of $2000 each to the said Grant, Birge, Forbes and Blake, respectively, and $1250 in cash to each of said parties. Said agreement having been arrived at, Blake was introduced to the seller of said land by said Grant and Birge, the said Blake thereupon purchased

from the seller of said land, one Mr. Bomar, of Fort Worth, Texas, the land hereinbefore referred to for the sum of $17,000, but had the deed and leases to the same made to the said Grant and Birge. It was understood by all of the parties at the time that the real ownership of the land vested in the said Blake, and that the deed and leases were made to the said Grant and Birge merely to secure them in the payment to them of the additional consideration aforesaid. That the said Blake bought said land from the said Bomar for the sum of $17,000 and paid the whole consideration therefor, whereupon he returned to Sherman, met his associates aforesaid, and reported to them that he had purchased land in Jefferson County, Texas, for himself and for them for the sum of $30,000, and attempted to collect from them their proportionate share of such amount.

"Defendant shows that all of the facts hereinbefore set out are alleged by him on information and belief. That at said time that the said Blake was making such report to his associates aforesaid, he invited this defendant to become a member of the syndicate, and become associated with the other members of the same in the purchase of said land. Defendant shows that at such time he had never seen the land which was to be turned over to said syndicate and knew nothing whatever of its value, cost or location, but having the utmost confidence in the integrity of the said Blake, did consent to become a member of said syndicate, upon the express condition, however, that he was to become a member of the same and was to go into said association upon exactly the same basis, terms and conditions as the said Blake himself was to become and be a member thereof. The said land purchased by the said Blake was to be turned over to the said syndicate at its actual cost to the said Blake. That no profit, directly or indirectly, was to be made or attempted to be made by the said Blake from this defendant or any of his associates in the purchase of said land from said syndicate.

"Defendant further shows that the said Blake thereupon represented that he had personally investigated the location, situation and other matters with reference to the land, and was satisfied with reference to its value. That said land had actually cost $30,000, and that he agreed with this defendant, that he, the said defendant, was to go into said transaction upon exactly the same basis, terms and conditions as the said Blake. That no profit directly or indirectly was to be made or was to be attempted to be made upon him in said transaction. That he was in 'on the ground floor, and that there were no cellars or subcellars in that transaction.'

"Defendant further shows that the syndicate aforementioned was organized for the purpose and was an association of its members for the purpose of purchasing said land in common, organizing corporations for the purpose of developing said land, and generally promoting the business of investing in oil lands in Jefferson County, Texas. That the

corporation to be so formed was to be gotten up in the following manner:·

"Each member of the syndicate was·to purchase an interest in said land, and after the land had been acquired in this manner and he had subscribed for a proportionate part of the capital stock of·such corporation, said stock was to be paid for by a conveyance to said corporation of the interest held by each member of such syndicate in said land, and that thereafter said corporation would sell sufficient stock to raise a fund to prospect for and develop the oil resources upon said land. It was further understood and agreed that after such subscription to such corporation was paid for in the manner hereinbefore mentioned, that the said syndicate was to remain in partnership as to their stock in said corporation, which was to be conveyed to trustees for the benefit of all the members of said syndicate, and that they were not to have the right to dispose of their .stock, but that said stock was to be held for the benefit of all. That in all of the transactions thereafter to be carried on the members of said syndicate were to act in common and in partnership.

"This defendant further alleges that but for the representations hereinbefore set out, and but for his confidence and belief in the good faith and truth of the statements made by the said J. W. Blake, he would not have embarked in any of the transactions hereinbefore or hereinafter set out; but he shows further, that· relying upon such representations he did subscribe for a $1000-interest in said syndicate, and agreed with the said Blake to become associated with him and the other members of the said syndicate to the extent of $1000 in forming the association to take over said land and to use said land in subscribing for the stock of said corporation, which this defendant alleges was to be known as 'The Sam Houston Oil Company.'

"Defendant further shows that the representations and agreement made to this defendant by the said Blake were made in the city of Sherman, on .or about the 22d day of April, 1901; that the land in question was situated in Jefferson County, Texas, and that this defendant was induced solely and· entirely by the representations of the said Blake as hereinbefore set out, and by the confidence he had in such representations, and in the said Blake, to subscribe to the capital stock of such corporation in such amount as he would be paid for by a conveyance to the same of one-thirtieth interest in said land, and to become a purchaser of a one-thirtieth interest in said land. But this defendant alleges that at all of the time the said Blake had a private profit in said transaction, unknown to this defendant, and which if he had known would have resulted in his refusing to invest in same; that had he known such fact he would not have embarked in any enterprise with the said Blake that required mutual fair dealing and good faith.

"Defendant shows that soon thereafter, a rumor became current in the city of Sherman that the said land had only cost $17,000, instead of $30,000, as had been represented and asserted by the said Blake,

which rumor, as this defendant is informed and believes the fact to be, caused the said J. W. Blake to at once depart for Beaumont, Texas. That at said time the land had not been conveyed to the said Sam Houston Oil Company by the said Grant and Birge, but that the said Grant and Birge at that time were themselves at Beaumont. This defendant shows that he did not hear such rumor in its fullest import and was not aware of its full significance, but that he himself had, on or about the 29th day of April, 1901, left the city of Sherman and had gone to Beaumont, Texas, where thereafter the said J. W. Blake arrived in a day or two.

"Defendant shows that upon the arrival of the said Blake at Beaumont, an interview was had between the said Blake and the said Grant and Birge, the result of which interview was an agreement between the said Grant and Birge and the said Blake in substance as follows, to wit:

"That said Grant and Birge were to convey their interest in said land to the said J. W. Blake, provided the said Blake would refund to each subscriber all moneys received by him as treasurer of such corporation (the Sam Houston Oil Company) from the subscribers to said company, and would assume the amount due the Grayson County National Bank of the draft for $17,000 which had been drawn by the said Blake in making the original payment for said land, and the said Blake agreed and bound himself to refund the amounts of money received by him from the subscribers to said corporation upon receipt from the said Grant and Birge of a conveyance of the property mentioned duly executed, and to assume the indebtedness aforesaid to the Grayson County National Bank. The purpose of such agreement was to secure and effect a return of the money paid in by all of the members to said pool, either as subscribers to said stock or as purchasers of an interest in said land, and it was so understood and intended by all of the makers at the time. That said agreement was in writing and is now in the possession of the said Blake, and he is notified to produce the same upon the trial of this cause, or secondary evidence will be resorted to to prove the contents thereof. That the subscription papers, minutes and all papers belonging to and pertaining to said proposed corporation are now in the possession of said Blake and he is notified to produce the same upon the trial of this cause or secondary evidence will be resorted to to prove the contents thereof.

"Defendant shows that while at Beaumont he became convinced that the land hereinbefore referred to had not cost the sum of $30,000 but had in fact cost only $17,000 or less. That thereupon he notified the said Blake that he would not further associate himself with him in said transaction and that he would withdraw from said syndicate because of the deceit which had been practiced upon him and the other parties connected therewith, and because of the misrepresentations made to them with reference to the cost of said land and its value, and with reference to the fact that no profit was to be made or attempted to be made upon them. But the said Blake did not release him from his sub-

scription aforesaid, and he, the said Blake, stated to this defendant that he had purchased said land through agents, and that it was true that misrepresentations had been made with reference to the cost of said land but that the misrepresentations had not been made by him, the said Blake, to his associates, but had been made by his agents, the said Grant and Birge, to him, the said Blake; that he had known nothing whatever of the true cost of said land; that he had been as much deceived as this defendant was, and the said Blake assured this defendant of his innocence of any knowledge of the true facts, and stated to him that he himself had just learned that the land aforesaid had not cost the said Grant and Birge $30,000, but had in fact cost them $17,000. That as soon as he learned this he had forced the said Grant and Birge to tell him the true cost of said land, which he then stated was $17,000, and that he, Blake, had forced them to make a sale to him of their interest in said land.

"Defendant further shows that if the said statements made by the said Blake were true he would have had no right to withdraw from his association, because the express condition upon which he became a member thereof was that the said Blake would attempt to make no profit off of him with reference to said transaction, and that believing that the said Blake himself had been deceived, and that as soon as he learned that his agents were attempting to make profit off of him, he not only forced them to turn said property over to him at its actual cost to them, but expressed his intention to give his associates the benefit of said transaction; and in fact the said Blake reaffirmed his good faith in every particular, which this defendant at said time believed. But this defendant shows that he is informed and believes the true facts to be, and so alleges, that the said Blake himself had been the purchaser of said land, and knew all the time the real value of same; that he himself had paid the sum of $17,000 or less therefor. That he himself had knowingly made the misrepresentations and statements that the land cost him $30,000, which was untrue, for the fraudulent purpose of inducing this defendant to become the purchaser of an interest in said land and to become a subscriber to the capital stock of the Sam Houston Oil Company; that when he learned that the true facts with reference to the real cost of said land were likely to be discovered by this defendant and the other associates, he went to Beaumont and the agreement hereinbefore referred to was entered into.

"Defendant further shows to the court that in all of the transactions set out an important consideration was mutual confidence and fair dealing, and that it was distinctly understood between the said Blake and this defendant that the utmost good faith and fair dealing was to be extended by the said Blake to this defendant; that the same was to be expected and given on the part of each; but that notwithstanding such agreement, the said Blake willfully attempted to mislead and deceive this defendant in the manner and for the purpose herein set out. That it was mutually understood and agreed that the fact of the

said Blake's innocence and good faith was a material fact and that the said Blake's representations with reference thereto were relied upon as true, and that this defendant would not enter or continue in any such association with the said Blake but for this fact.

"Defendant further shows that the said Blake concealed from him the existence and contents of the said agreement to release the members of said association from their subscription, and that in fact he had never known of such contract until about the 4th day of May, 1903, and that the said Blake had not at any time acted in good faith with defendant, because this defendant charges it to be a fact that he had then entered into an agreement with the said Grant and Birge by which all of the subscribers to the syndicate aforementioned were to be released from their subscriptions and their money returned to them, which he fraudulently concealed from this defendant; and this defendant further charges that the said Blake at said time entered into a secret agreement with the said Grant and Birge, by which the land hereinbefore referred to as purchased by the said Blake was transferred to the said Blake upon the express understanding that in the event the said Blake was unable to resell said land for the sum of $17,000, that the said Grant and Birge were to share equally in any loss to be sustained by the said Blake, provided that the loss to either of them, the said Grant and Birge, was to be limited to the sum of $1000, which agreement the said Blake fraudulently concealed from this defendant.

"Defendant further alleges on information and belief that the said Grant and Birge have each paid back to the said Blake the sum of $1000, all of which has been concealed from him. Defendant further shows that he believed the representations made to him by the said Blake as to his innocence in the transactions hereinbefore set out; that he believed that the said Blake had purchased said land through agents who had deceived him as to its real cost; that he believed that the said Blake's dealings with this defendant and the other members of said syndicate were carried on in the utmost good faith; that he believed that as soon as the said Blake learned that he had been deceived in the cost of said land he forced out of this transaction the guilty parties, and gave his associates the benefit of securing said land at a less price than he had at first purchased it, and so believing and not knowing that the said Blake had agreed to release from their subscriptions to the said syndicate all of the parties to same, this defendant did not withdraw his subscription to this pool and did not terminate his associations with the said Blake and the other members of said syndicate; and afterwards in pursuance of his original agreement, being still in ignorance of Blake's guilt with reference to the deceit practiced upon him, as herein stated, and of his agreement with Grant and Birge to release him and the other subscribers to the Sam Houston Oil Company, and of his further agreement with the said Grant and Birge that they were to share in his loss upon the sale of this land up to a certain amount, this defendant did give the note on the day set out in plaintiff's petition

to the said J. W. Blake, although at that time he and the said Blake well knew that the land hereinbefore referred to was absolutely valueless.

"This defendant further shows that he did not discover that the said J. W. Blake had deceived him as to his knowledge of the real cost of said land or had concealed from him the various agreements made with the said Grant and Birge, until some time after he had executed and delivered the said note; that as soon as he learned of these facts he went to the said Blake and repudiated the entire transaction. This defendant shows that all of the moneys that have been paid for this land have been paid by the Grayson County National Bank, and that the payments have been made to the said Blake, president of the said bank. That at the time he executed said note the said bank had not been paid back all of the money paid by it for the purchase of said land, but that a very large sum was still due it. Defendant shows that all of the directors of this bank were cognizant of all of the facts and circumstances hereinbefore set out, and that the bank had full notice of the misrepresentations made to this defendant with reference to said subscription, and that at the time, it took said note he merely applied it upon the amount aforesaid paid by it for said land. That it knew that said note was obtained from this defendant by fraud and misrepresentations, and that the said ostensible discounting or transfer of said note by Blake to this bank was made for the purpose of placing the same in the hands of an innocent purchaser. But this defendant is informed and believes, and so alleges, that the said Blake is the real owner of said note; or if he be mistaken in this, he alleges on information and belief that the said Blake and the said Grayson County National Bank are jointly interested in said note. This defendant shows that if he be mistaken in the allegations hereinbefore made that the said J. W. Blake and the directors of the said bank were guilty of the frauds hereinbefore set out, that then the said J. W. Blake was guilty of the said frauds, misrepresentations and concealments, and that he is an indorser of said note, and that by reason of the agreement hereinbefore set out entered into between the said Blake and the said Grant and Birge, and the release by the said Blake of the other parties to the subscription of the Sam Houston Oil Company, without the consent of this defendant, the said Blake became legally obligated to refund and pay back to this defendant the amount of such stock subscription; and if he be mistaken in the allegation that the said plaintiff took said note with full knowledge of the frauds, misrepresentations and concealments which render the same void, and if for any reason he should be liable to the plaintiff in any sum whatever, which he denies, then and in that event he is entitled to judgment over and against the said J. W. Blake for said amount.

"Premises considered, defendant says that the said J. W. Blake is a necessary party to the final adjudication of this cause. Wherefore he prays that the said J. W. Blake be made a party to this suit and that upon final hearing the note declared upon in this suit by plaintiff be

canceled and held for naught and set aside as against plaintiff and said Blake; but in the event plaintiff should recover any judgment against this defendant, that he have judgment over against the said J. W. Blake, and for such other and further relief, either in law or in equity, as he may in this behalf deserve, and as in duty bound he will ever pray."

Appellant's first assignment of error complains of the action of the court in giving to the jury the following special instruction asked by the appellee: "If you believe from the evidence that at the time the note sued on was given the defendant had ascertained, or by the use of ordinary diligence could have ascertained, the falsity of any false representations that had been made to him by Blake, then you will find for the plaintiff, no matter what fraud may have been practiced."

Appellant's insistence is that the error in said charge consists in its making appellant liable upon the note, although the jury may have believed that Blake made the false representations alleged to have been made by him, if by the exercise of ordinary diligence he, appellant, could have ascertained that such representations were not true. We agree with appellant in his contention and are of opinion that the court erred in giving said special instruction. If the representations were of a character to induce appellant to rely upon them, and he believed them to be true, and acted upon them, this is sufficient, although he might have ascertained by the exercise of ordinary diligence that they were not true. Labbe v. Corbett, 69 Texas, 503; Griffeth v. Hanks, 46 Texas, 217; Holstein v. Adams, 72 Texas, 485; 14 Am. and Eng. Enc. of Law, 2 ed., 122; Wright v. U. S. Mortgage Co., 42 S. W. Rep., 789; International & G. N. Ry. Co. v. Harris, 65 S. W. Rep., 885.

Appellee, however, contends that the giving of the above quoted special charge does not constitue reversible error, because there was in this case no evidence of any material fraud or deceit. We disagree with this contention of the appellee. Upon the trial in the court below the following facts were agreed to:

"1.   The execution and transfer of the note sued on were admitted.

"2.   It was agreed that if the defendant H. L. Hall would have a defense against this note in the hands of J. W. Blake, it is good and valid as against the plaintiff.

"3.   On April 20, 1901, John Grant and Nat Birge had an option on certain land situated in Jefferson County, near Beaumont, Texas, and were negotiating with certain parties in Sherman, Texas, with reference to the sale of that and other lands. On April 22d J. W. Blake went to Beaumont, Texas, and entered into an agreement with Grant and Birge by which he, for himself and associates, was to take up their option on this land. On the same day he was introduced to the seller of this land, D. T. Bomar, and paid him $17,000 for said land by giving a draft as president of and on the Grayson County National Bank for said amount. The title to the land was taken in the name of Grant and Birge under an arrangement, the testimony with reference to which will be set out more fully hereafter. On April 24th or 25th Blake returned to Sherman,

Texas, and in connection with Grant and Birge began the organization of a syndicate of citizens who were to contribute all together $30,000 in shares of $1000 each, having it understood that they would form a corporation to take over the lands hereinbefore referred to. It was understood that the same members of the syndicate would subscribe for the stock in the Sam Houston Oil Company an amount in proportion to their subscription to the syndicate, and that they would pay up their subscription to the Sam Houston Oil Company by a transfer of their interest in the land, and when the Sam Houston Oil Company had got them all in then the deed would be made by Grant and Birge to the Sam Houston Oil Company. It was agreed that sufficient stock of the Sam Houston Oil Company would be sold to raise money to sink a well upon the land, and if it turned out to be a 'gusher,' as everybody supposed it would at that time, they would sell the balance of the stock. The company was to be organized for $275,000."

There is testimony in the record tending to show that J. W. Blake met Dr. Grant and Nat Birge in Beaumont, about the 20th of April, 1901, and they informed him that they had an option on certain lands in Jefferson County, near Beaumont, and offered the land to him at $22,000. After some negotiations between Blake, Grant and Birge, it was agreed that Blake should sell the land for $30,000, and that Grant and Birge would let him have it for $17,000, with the understanding that Blake, Grant, Birge and Forbes were to share equally in the difference between $17,000, the amount paid for the land by Blake, and $30,000, the amount for which he was to sell it.

Blake gave his draft on appellee for $17,000 to the owner of the lands, and the deeds were made to Grant and Birge to protect them in their interest in the difference between the cost of the land and the amount at which Blake was to sell it. On his return from Beaumont, Blake went to the store of appellant and told him that he had been to Beaumont and purchased some land down there and was organizing a company and had sold nearly all the shares, but had a few left which he was placing with his friends, and asked appellant if he wanted to take one. Appellant asked him if he had been down there and investigated, and Blake replied that he had and that the land cost $30,000, and that he wanted to let appellant in the land proposition; that he, Blake, knew the cost of the land, and that appellant was getting in on the ground floor, and assured him, appellant, that there was no basement to the ground floor and that appellant was getting in exactly on the same plane that he, Blake, was. Appellant told Blake that as he, Blake, had been down there and investigated, that he would take a share of $1000. The company Blake was organizing was to be called the Sam Houston Oil Company.

Shortly after this appellant heard rumors that the land had not cost $30,000, and he, together with J. P. Harrison, who had also agreed to take a share in the enterprise, went to Blake and informed him of such rumors, and Blake said that the land, as far as he knew, had cost that

much; that if it had cost less than $30,000 he did not know it. Shortly after this appellant and Harrison went to Beaumont, and upon investigation they ascertained that the land had not cost $30,000. Whereupon they telegraphed Blake at Sherman to leave them out of the corporation. In a day or two after appellant and Harrison got to Beaumont, Blake arrived there, and upon his arrival they told him they had ascertained that the land had never been worth $30,000, and he, Blake, replied that he had heard that the land had not cost that, and he had come down there to investigate himself. Dr. Grant and Birge were also at Beaumont at that time. Blake said he was going to see Grant and Birge and force them to tell him the truth about the cost of that land; that if it did not cost $30,000 he would find out what it did cost. Afterwards Blake came back and told appellant and Harrison that he had met Grant and Birge and forced them to tell him what the land had cost, and that it cost only $17,000; and that he told them, Grant and Birge, that they had deceived him and the people at Sherman, and that he, Blake, could not afford to be connected with them; and also stated that he then and there gave Grant and Birge the option to get out of the transaction, or he, Blake, would.

Blake then stated to appellant and Harrison that he had been as much deceived as they had, and that he had on that day taken the land from Grant and Birge for $17,000. Blake also stated to appellant and Harrison at this time that he became so enraged in the interview with Grant and Birge on account of the way he had been deceived that he wept. Blake also stated in this conversation to appellant and Harrison that he could not afford to be placed in such an attitude before his friends, and that he told Grant and Birge that they would have to get out, or he would get out.

Appellant testified that from these statements of Blake he believed that he, Blake, had been deceived as well as he and other subscribers; that he believed that Grant and Birge had put up a job on him; that they had bought the land at $17,000 and unloaded it on Blake for $30,000. Appellant further testified that he felt proud of Blake on account of what he believed was a laudable effort upon his, Blake's, part to protect his friends from what appellant then supposed to be a deception and fraud of Grant and Birge; and he, appellant, told Blake to let his original subscription stand.

Appellant also testified that the only conversation in reference to his subscription at that time was that he would let it stand, and that no other organization was formed; that his understanding was that Grant and Birge and others representing about $8000 in subscriptions, would withdraw, and their vacancies were to be supplied with new subscribers, and they, appellant, Blake and Harrison, figured on boring wells and going ahead with the original plans. That he, appellant, understood that he was getting a one-seventeenth interest in the land, instead of a one-thirtieth interest; that all the subscribers would get the land at $17,000, instead of $30,000; and that was the only way in which the

transaction was changed. No other subscribers went out, except Grant and Birge, that he knew of. They, appellant, Blake and Harrison, were anxious to keep the original subscribers in, and it was discussed whether Grant and Birge would be able to make others withdraw.

Appellant testified that he believed that Blake had acted in good faith and was at this time acting in good faith, and that if at that time he, appellant, had known that Blake, at the time he made the representations to him that the land had cost $30,000, knew that it had not cost that amount, he, appellant, would not have continued in the company. Appellant testified that four or five days after that the "whole bottom fell out," and that when Blake came around to take the note "we all knew that the land was not worth anything like $17,000," but he, appellant, believed then that Blake had acted in good faith and gave the note. Appellant testified that he did not know that Blake knew that the land did not cost $30,000 until after the note was executed, and that as soon as he became so informed he repudiated the entire transaction.

The testimony in the record shows that at the time Blake made the deal with Grant and Birge to take the land at $17,000 there was a verbal agreement by which they, Grant and Birge, agreed that if Blake sustained any loss by reason of his purchase of the land at said price they would make it good to him to the extent of $1000 each, in the event the loss was as much as $3000; and that they, about six months prior to the trial, paid him $1000 in cash and $1000 in stock in the Gertner-Kelley Drug Company.

Appellant testified that Blake never at any time told him anything about this agreement.

The testimony also shows that the following written agreement was entered into by Grant, Birge and Blake:

"This agreement, made and entered into this the 2d day of May, 1901, between John Grant and N. B. Birge of the first part and J. W. Blake of the second part, all of Grayson County, Texas, witnesseth as follows:

"The parties of the first part agree and bind themselves to convey to said J. W. Blake all their interest in the following lands, to wit: Five acres, being B. 8 of the N. half of the J. W. Bullock survey; thirty acres, being B 5, 6 and 7 of section 3 T. & N. O. P., and forty-two and one half acres, being block 5 of the W. Dychess survey, all in Jefferson County, Texas.

"Provided the said J. W. Blake shall refund to each subscriber all moneys received by him as treasurer of the Sam Houston Oil Company from the subscribers to said company, and assuming the amount due the Grayson County National Bank on a draft for the sum of $17,000 drawn by J. W. Blake, president, in favor of D. T. Bomar, dated on or about April 22, 1901.

"The said J. W. Blake agrees and binds himself to assume the indebtedness above mentioned and refund the amount received by him from any subscriber to said Sam Houston Oil Company, on receipt from

said Grant and Birge of conveyance to the property mentioned, duly executed. (Signed)  John Grant, N. B. Birge, J. W. Blake."

Appellant testified that he never at any time knew of the above agreement, and that Blake never at any time offered to release him from his subscription.

We are of the opinion that the above testimony tends to show that Blake represented to appellant that the cost of the land was $30,000, and that the testimony shows that its cost was only $17,000; and that the testimony tends to show that after appellant learned of the falsity of such representations, and before he agreed to continue his subscription in the proposed corporation, Blake represented to him that he, Blake, was deceived by Grant and Birge and did not know that the land cost less than $30,000 at the time he made such statement, and that appellant relied upon and believed such latter statement to be true, and was thereby induced to continue his subscription in said corporation. And the testimony shows that Blake did know at the time that he made the statement to appellant, according to his (appellant's) testimony, that the land cost $30,000, that its cost was less than that amount. And the testimony tends to show that the original plan to organize a corporation and proceed to develop the oil resources of the land was not abandoned at the time that appellant agreed to let his subscription stand; nor was it abandoned, according to the testimony, at the date of the execution of his note. And it being shown by the testimony that Blake would be a stockholder in the company and have a right to participate in its acts, and to some extent direct and control the business and policy of the corporation, it was a material matter to appellant that he be a person of integrity and honor, who would deal fairly and honestly with his associates in the corporation. Hence we conclude that the above mentioned representations were material and the action of the court in giving the above special charge constitutes reversible error.

We are also of opinion that if Blake represented to appellant that the land cost $17,000, and that he, appellant, should be entitled to go into the proposed corporation on the same plane or basis that he, Blake, went in, and that in the purchase of the land by Blake there was an agreement by which Blake was to be protected to the extent of $2000, in the event he sustained loss to the extent of $3000, and that Blake never disclosed such agreement to appellant, that such representations and concealment would be material. And further, if after appellant had discovered that the land did not cost $30,000 and had notified Blake of the withdrawal of his subscription to the corporation, Blake entered into an agreement with Grant and Birge whereby he was to take the land at $17,000 and release each subscriber who had paid in their money, and entered into a further agreement by which he agreed to release all of the subscribers of the Sam Houston Oil Company who desired to be released; and if Blake concealed from the appellant the existence of such agreement, and if the appellant had known of such

agreement, he would not have continued his subscription in the proposed corporation, such concealment upon the part of Blake would amount to a material deception practiced by him upon the appellant. And we are inclined to believe that there is testimony in the record tending to show such agreement and its concealment by Blake; and that had appellant known of the same at the time he agreed to continue his subscription in such corporation he would not have done so.

Appellant's second assignment of error is as follows: "The court erred in refusing defendant's first requested charge, and in failing to charge the jury that if they believed from the evidence that defendant gave his note in payment of a subscription to a syndicate which he was induced to join by the representations of J. W. Blake, that he, the defendant, was to become a member of said syndicate upon exactly the same terms and conditions and upon perfect equality with him, the said Blake; and if they further believed from the evidence that said Blake had a secret agreement at the time the said defendant executed his note by which he was to receive back $2000 of the purchase money of the lands which were to be purchased by the said syndicate, and made no allowance to the said Hall on account of said $2000, but concealed from the said Hall the fact of his receiving back any such sum, or that he would receive same; and if they further believed from the evidence that the representations of the said Blake to the said Hall was a material representation, and induced him to become a member of said syndicate, then and in that event the said Hall would be entitled to a rescission of his contract and the cancellation of the note."

The testimony tends to show that at the time appellant agreed to continue his subscription for a share in the corporation Blake was acting as promoter of the proposed corporation; and under the law he was required to act fairly and honestly with the appellant, and it was his duty to disclose to him the true price and terms for and upon which he had purchased the land. The authorities hold that when the promoter represents that the property can be bought for a certain price, and the price stated really includes commission or profit to the promoter, any of the subscribers or associates in the proposed corporation may withdraw from the transaction on discovering the fraud; and if a note or other contract has been executed, the same may be rescinded. Morawetz on Priv. Corp., sec. 293; Short v. Stevenson, 63 Pa., 95; 23 Am. and Eng. Enc of Law, 235, 239; Dickerman v. Northern Trust Co., 176 U. S., 204; Yale Stove Co. v. Wilcox, 64 Conn., 101.

We think the court erred in not giving appellant's said special charge, and we therefore sustain said assignment of error.

Appellant's third assignment of error complains of the action of the court in refusing to give his second requested special charge, which is as follows: "If you believe from the evidence that on May 2d J. W. Blake entered into a verbal or written agreement or into an agreement in writing by which he released the subscribers to the Sam Houston Oil Company who had paid in their money, and entered into a further

agreement by which he agreed to release all of the subscribers of the Sam Houston Oil Company who desired to be released, it would operate in law to release all of the subscribers to the said Sam Houston Oil Company; and if you further believe from the evidence that the said J. W. Blake concealed from the defendant Hall the existence of such agreement, and if you further believe that the said Hall, had he known of such agreement, would not have continued in his association with the said Blake in the purchase of the land aforesaid, you will find for the defendant."

We are inclined to think that it was not error for the court to refuse to give the above special charge in the language used, but we think the court should have given a charge upon the issue to which said special charge evidently was intended to apply. If appellant had requested the court to charge the jury that if they believed from the evidence that Blake entered into an agreement, verbal or written, by which he agreed to release all of the subscribers of the Sam Houston Oil Company who desired to be released; and if they further believed from the evidence that Blake concealed from the defendant Hall the existence of such agreement; and if they further believed that the said Hall, had he known of such agreement, would not have continued in his association with the said Blake in the purchase of the land, then they should find for the defendant, such charge should have been given by the court.

Appellant assigns error upon the refusal of the court to give to the jury his fourth requested special charge, which is as follows: "If you believe from the evidence that the question of whether or not Blake had previously made representations as to the cost of the land involved in this controversy, or was himself innocent of any misrepresentation, was understood by Blake and Hall to be a material representation and fact and consideration for Hall executing the note involved in this controversy, and if you believe that Blake was not innocent, and that but for such belief in Blake's innocence Hall would not have executed said note, you will find for defendant."

Appellee in its brief concedes that this charge embodies a correct principle of law, but contends that there was no testimony authorizing the court to give same to the jury. Without discussing the testimony bearing upon the issue to which this charge is intended to apply, we believe there is sufficient contained in the record to justify the court in giving said special charge, and its refusal was error.

In his sixth assignment of error, appellant complains of the refusal of the court to give his fifth requested charge, which is as follows: "You are instructed that if you believe from the evidence that Blake represented to Hall that he was to purchase his interest in the land at exactly the same price and on the same conditions that he, Blake, was to pay for same, and if under the general charge you find for plaintiff, then you must allow defendant a credit of one-seventeenth of $2000, or $118.25."

There is a phase of the evidence in this case which would authorize

this charge. Blake testified that he told the appellant that he had taken the land from Grant and Birge at $17,000; that he had taken the responsibility on his shoulders and that everybody could get out that wanted to, and that he, appellant, was released; that he, Blake, was going to work to sell the land if he could, and that he would do the best he could. That when he told appellant this he said that on the $17,000 basis he would stay in it with him, Blake; that when the new arrangement was made at Beaumont, and appellant said he was going in on the $17,000 basis, it was understood that they would go back and organize a new company and Mr. Mosley would fix up the new papers. That about three months after this Mosley kept putting off getting up the organization, he went to see appellant and Harrison and wanted to close the matter up, and wanted to know if they insisted on going on with the organization; and if so, he would have the papers drawn up by somebody other than Mosley; that appellant and Harrison said no, and Harrison paid his money and appellant executed his note.

If at the time appellant executed his note it was the understanding that the purpose to organize a corporation for developing or attempting to develop the oil resources, if any, of said land, was abandoned, then appellant would not be entitled to a rescission of his contract or a cancellation of his note, but would be entitled to participation in the said $2000 paid Blake by Grant and Birge, under said verbal agreement, in proportion to his interest in said land; and under that view it was error for the court not to give said special charge.

For the errors mentioned, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*