BARTON v. COX et al.  (No. 8144.)

(Court of Civil Appeals of Texas. Ft. Worth. April 3, 1915. On Motion for Rehearing, May 15, 1915.)

1. VENDOR AND PURCHASER ⬷176 — CONTRACTS—MISREPRESENTATIONS.

Where an agent of the vendor represented to the purchaser that the tract contained 100 acres, while it contained only 84.04 acres, and the purchaser relied on the representation, the purchaser was entitled to an abatement in the price, whether the representations were made in good faith or not.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 333–340; Dec. Dig. ⬷176.]

2. VENDOR AND PURCHASER ⬷176—SALE IN GROSS—RELIEF FOR SHORTAGE IN AREA.

Where a sale of real estate is in gross, the purchaser is not, as a general rule, entitled; in the absence of fraud or gross mistake, to an abatement of the price, though, where the deficiency is so great as to shock the conscience of the court, relief can be granted on the ground of fraud, though the quantity is qualified by the words "more or less."

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 333–340; Dec. Dig. ⬷176.]

3. VENDOR AND PURCHASER ⬷176—SALE IN GROSS—RELIEF FOR SHORTAGE IN AREA.

A vendor of a tract of land containing 84.04 acres represented that it contained 100 acres,

and the purchaser relied on the representation and accepted a deed describing the land as containing 100 acres "more or less." Both parties believed that the tract contained 100 acres. The purchase was in gross. Held, that the purchaser was entitled in equity to an abatement of the price for the deficiency, in the absence of anything to show that the parties intended to take the risk of a deficiency or of an excess.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 333–340; Dec. Dig. ⬷176.]

4. VENDOR AND PURCHASER ⬷176 — CONTRACTS OF PURCHASE—MISTAKE AS TO QUANTITY—EFFECT.

A purchaser going on a tract of land represented by the vendor as containing 100 acres, while in fact containing only 84.04 acres, and vey, and accepting a deed describing the land as containing 100 acres more or less, will not failing to ascertain the exact acreage by a surbe denied relief for the deficiency on the ground of failure to use proper diligence, where the purchaser and the vendor were friends, and there was no reason why the purchaser could not rely on the vendor's judgment.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 333–340; Dec. Dig. ⬷176.]

On Motion for Rehearing.

5. PRINCIPAL AND AGENT ⬷156—PERSONAL LIABILITY OF AGENT—JUDGMENT.

Where an agent for the sale of land was not personally liable for any misrepresentation as to the acreage, a judgment granting the purchaser relief for a deficiency in the acreage should not include the agent personally.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 583–587; Dec. Dig. ⬷156.]

6. EXCHANGE OF PROPERTY ⬷8—REMEDIES—DAMAGES.

Plaintiff exchanged his land estimated by the parties to be worth $5,000 for defendant's land represented to contain 100 acres, but actually containing only 84.04 acres. Plaintiff gave, in addition, a note for $2,750, secured by a lien on the land acquired by him. The parties acted under mutual mistake as to the acreage of the land received by plaintiff. Held, that plaintiff could recover such sum for the deficiency as would, when added to the value of the land actually received, give him the equivalent of what he contracted for, free from any deduction based on the theory that the land conveyed by him was priced too high in the absence of any clear evidence on that subject.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 14–18; Dec. Dig. ⬷8.]

Appeal from District Court, Erath County; W. J. Oxford, Judge.

Action by J. L. Barton against Mrs. Eddie Cox and another. From a judgment for defendants, plaintiff appeals. Reversed and rendered.

Keith & Johnson, of Stephenville, for appellant. Chandler & Pannill, of Stephenville, for appellees.

CONNER, C. J. Appellant instituted this suit on the 16th day of December, 1913, alleging that, on the 22d day of November preceding, he had purchased of Mrs. Eddie Cox, acting by her authorized agent, R. E. Cox, a tract of land situated in the corporate limits of the town of Stephenville, represented to

contain 100 acres, at the price of $77.50 per acre, but which it was soon thereafter discovered contained only 84.04 acres, and he sought to recover as damages the loss occasioned by the deficiency. The petition contained further allegations to the same end of a mutual mistake of the parties as to the quantity of the land. The defendant answered by a general denial and that the sale was not by the acre but one in gross; the plaintiff accepting the risk of a deficiency. The case was submitted to a jury on special issues, which being answered favorably, as the court construed, to the defendant, judgment was rendered for her, and the plaintiff has appealed.

The special issues submitted, together with the answers of the jury thereto, are as follows:

"Special Issue No. 1: Was the sale of land from Mrs. Cox to the plaintiff that of a specific quantity of land, to wit, 100 acres; that is, was it a sale by the acre? Or was it a sale of a specific tract of land by description; each party risking the quantity? A. It was not a sale by the acre. It was a sale of a specific tract in gross.

"Special Issue No. 2: If, in answer to special issue No. 1, you have found that the sale was by the acre of a specific quantity, to wit, 100 acres, then how many acres short of the 100 was the tract that plaintiff actually got, and what price per acre was plaintiff to pay for said land? A. It was not a sale by the acre, and the tract measured 84.04 acres, being short of 100 acres 15.96 acres at $77.50 per acre.

"Special Issue No. 3: What price per acre was the shortage worth at the time the sale was made to plaintiff, exclusive of the building, well, and other improvements on the premises? A. We find that the shortage of the tract of land, exclusive of improvements, to be worth $47.50 per acre.

"Special Issue No. 4: If, in answer to special issue No. 1, you have found that the sale was of a specific tract by description, then did the defendant R. E. Cox represent to plaintiff that said tract in gross contained 100 acres of land? A. We find that the said R. E. Cox estimated the tract of land to contain 100 acres.

"Special Issue No. 5: If the defendant R. E. Cox represented to plaintiff that the tract of land contained 100 acres of land, then did the plaintiff believe and rely on said representations of the said R. E. Cox? A. He did.

"Special Issue No. 6: Did the plaintiff and R. E. Cox both believe that the tract of land contained as much as 100 acres, and was there a mutual mistake on the part of both of them in regard to the amount and quantity of land contained in said tract? If there was, then did plaintiff use such caution and diligence as an ordinarily prudent person would have exercised in matters of that kind to determine the quantity of land in said tract prior to the time the trade was closed? A. They both believed that the tract contained as much as 100 acres, and there was a mutual mistake on the part of both of them as to the amount and quantity of the land in said tract. We find that the plaintiff did not use such caution and diligence as an ordinary person would have exercised in matters of this kind to determine the quantity of land in said tract prior to the time the trade was closed."

Among other complaints appellant insists that the court erred in denying his motion to enter judgment for him upon the verdict so returned, and we are of the opinion that this contention must be sustained.

The undisputed evidence shows that R. E. Cox, acting for his mother, Mrs. Eddie C. Cox, and appellant, had been negotiating for an exchange of places for some time. Finally appellant and R. E. Cox went to and on the land in controversy, and, after appellant looked over it, the parties agreed upon terms. Appellant gave a farm owned by him some five or six miles in the country at an agreed valuation of $5,000 and his note for $2,750 for the place involved in this controversy; the note being secured by a lien on the land he so acquired. In this connection it may be stated that appellee, soon after the transaction under consideration, conveyed to other persons the note mentioned and part of the land received by her.

And, reading issues Nos. 4 and 5 together with the answers thereto of the jury in the light of the evidence, the inference is strong that R. E. Cox represented that the tract of land for which appellant was contracting contained substantially 100 acres, and that appellant relied upon such representations. Among other things, R. E. Cox testified:

"I represented my mother, Mrs. Eddie C. Cox, in this trade between she and Mr. J. L. Barton. I have not 5 cents pecuniary interest in this trade. I was just acting for my mother. When I took Mr. Barton to this place, I borrowed a buggy, and we drove to the corner like Mr. Barton said we did, and Mr. Barton got out and walked over the place a short ways, didn't walk very far, and came back and got in the buggy. We started on back and got to talking, and I said: 'Mr. Barton, I have never surveyed this place, but we have always estimated it to be 100 acres. I believe it is here, but I don't know.' And I went on to tell him why I believed it; that my father's deed called for 192 acres, less 30, which would leave 162 acres; the road divided the tract of land, and we always estimated it at 60 acres on one side and 100 on the other side, and, when the tract was opened up, it didn't quite run the 60 acres, and I told Mr. Barton that. I said: 'We have always estimated it 100 acres, but to know, I have never run it out.' * * * As to the words '100 acres more or less,' as written in the deed, when preparing the deed, I said: 'Write it "more or less." I have never surveyed that land. It is merely an estimation. Mr. Barton knows what he is getting, and put it "100 acres more or less." There might be a few acres more and might be a few acres less.' And Mr. Barton never opened his mouth one time. I did not tell Mr. Barton the 100 acres were all right when he said he just wanted 100 acres. * * * In talking to Mr. Barton with reference to the tillable land on this place, I told him in the same way that I didn't know exactly, but that I figured 75 acres, probably more and probably less; that I had worked it when I was a boy; but that we have never surveyed it, and he knew it was that way. He knew I had never surveyed it. I feel like there are 75 acres of tillable land on the place, but, as I tell you, I never surveyed it. It is an estimation."

Cross-examined he testified:

"I don't know whether we have been rendering that place at 100 acres and paying taxes on that amount. I wouldn't say whether we have or have not. I have not rendered it in six or seven years, during which time it has been rendered by my mother and B. M. Cox. I wouldn't say that it wasn't rendered at 100 acres all the time, and I wouldn't say that we didn't pay taxes on 100 acres. I believed there

were 100 acres there. I told Mr. Barton I thought they were there, but I told him why I thought it. I think I worked that land three years. I told Mr. Barton I thought the 100 acres were there, but that I had not surveyed it. I would not have told him that if I didn't intend for him to believe it. I thought myself the 100 acres were there, but I didn't know. I didn't believe that tract of land would fall short 16 acres. When Mr. McKewn Johnston surveyed the land and Mr. Barton reported the result to me, I thought there was a mistake. I thought there was more land there than that, and I had them go back and resurvey it. My reasons for having the land resurveyed were I didn't like to have a controversy with a man. I thought if the 100 acres were there he wouldn't kick any more. At the start, when Mr. Barton came to the store to see me with reference to this shortage, after the survey was made, I told him then that I thought the 100 acres were there. * * * I gave Mr. Barton my reasons for believing there were 100 acres in the tract, as I have already stated. I had lived on that place since I was a boy till I came to town about 10 years ago. I believe we moved on to that place in the fall of 1893. Mr. Barton and I were friends. He traded some with me. There was no reason why he couldn't rely upon me; no reason why he couldn't take my judgment. * * * When we were writing the deed, I told Mr. Chandler to write the words 'more or less'; that I didn't know for sure how many acres there were. I had never asked a lawyer about that matter, because, as I told you in the starting, that I sold that place for 100 acres, and I wouldn't sell that place unless I knew there were 100 acres, and, if I knew there were 100 acres there, I would put it 100 acres, but I didn't know that. Therefore I wanted to put it 'more or less.' I did not know there were not 100 acres there at the time the deed was drawn, and I wanted those words 'more or less' in there because I didn't know. I don't know that I was particularly afraid there were not 100 acres there, but I wanted to deed Mr. Barton what I had there. If he had over 100 acres, let him get it. If there were less than 100 acres, let him get it. Q. If you told him there were 100 acres there when you made that trade you knew he believed that, didn't you? A. He believed it in his own estimation. I wanted to put it 'more or less,' because we were trading places as they stood. In using the words '100 acres' in talking to Mr. Barton, I did so to convey the meaning. When I first told Mr. Barton that I had worked that land and was satisfied there were 100 acres of land there, I meant to convey the idea to him that there were 100 acres of land there. I told Mr. Barton we had always estimated it to be 100 acres. Q. You knew he had only ridden down there in a buggy and got out and walked out a little piece in the land? A. Yes, sir; as far as I knew. Q. He couldn't see the whole thing, could he? A. He could see the creek and the fence. I had not thought that his ideas of the amount of the land would not be as good as mine; his having been on the place one time and I having lived on it several years. I knew Mr. Barton was an ordinary farmer. Q. You intended for him to believe there were 100 acres there, didn't you? A. I told him like I have stated, that we estimated it. I supposed he would take it at 100 acres or something near 100 acres. He knows I didn't guarantee 100 acres."

[1] If R. E. Cox did so represent, and appellant relied thereon, as the jury found, then it is clear, whether the representations were made honestly and in good faith or otherwise, that appellant was entitled to relief by way of an abatement in the price he paid or to recover the value of the property of which

he was so deprived. See Mitchell v. Zimmerman, 4 Tex. 75, 76, 51 Am. Dec. 717.

[2, 3] The question, however, of whether the verdict is to be interpreted as a finding that R. E. Cox made representations as to the quantity of the land afterwards found to be false, may possibly be subject to some doubt. But, if we interpret the verdict in appellee's favor in this respect, it must nevertheless certainly be accepted as true, as indeed is established by the unassailed findings of the jury, that both of the active parties to the transaction now under consideration believed that there was 100 acres in the tract of land appellant was purchasing, and that they both alike were mistaken as to the real quantity. That the mistake was a material one is not questioned, nor can it be. So that the question is whether, under such circumstances, appellant is entitled in equity to the relief he seeks.

Ordinarily, where the sale is in fact one in gross, the purchaser is not entitled, in the absence of fraud or gross mistake, to an abatement of the purchase price. If the purchaser has inspected the land and has obtained the very tract he intended to buy and all the vendor intended to sell, he can have no relief, although the deed purports to state the number of acres, unless the deficiency is so great as to shock the conscience of the court, in which case relief will be granted on the ground of fraud. See 39 Cyc. 1588; O'Connell v. Duke, 29 Tex. 300, 94 Am. Dec. 282; Wheeler v. Boyd, 69 Tex. 293, 6 S. W. 618; Eaton v. Tod, 68 S. W. 546. But as said by our Supreme Court in the case of Wheeler v. Boyd, supra:

"Even in a case where the land is sold in gross, and the quantity stated in the conveyance is qualified by the words 'more or less,' the purchaser will be relieved in equity if the deficiency be great."

See, also, Smith v. Fly, 24 Tex. 345, 76 Am. Dec. 109.

We think it will be found by an examination of the cases that equity denies relief because of a deficiency on the theory that, from the terms of the deed or otherwise, it appears that the purchaser contemplated that a deficiency might exist, and that it was the purpose of the parties that he should assume the risk of a deficiency. As indicated by the authorities from which we have already quoted, the mere fact that the sale is one in gross, or the mere fact that the conveyance, as in the case before us, is qualified by the terms "more or less," does not, as a matter of law, establish such purpose. The fact that the sale is in gross, and that the terms "more or less" are used in the conveyance, are merely evidentiary in nature. They tend to show that the parties to the conveyance intended to take the risk of an excess or of a deficiency, as the case may be, and, in the absence of anything further, are doubtless sufficient to establish such conclusion. But, in the absence of an express stipulation to

that effect, equity will not infer from the facts mentioned that the parties intended to assume the risk, where it is further shown that the excess of deficiency is gross. In the present case we think a consideration of the evidence shows that it was not intended, either by R. E. Cox or by appellant, that appellant should assume the risk of the material deficiency shown in this case. We do not think that a purpose to so assume, or an agreement to so assume, is to be implied from the testimony of R. E. Cox, or from the findings of the jury. Indeed, it is significant, we think, that the jury failed to so find in answer to the first special issue, notwithstanding a finding on the subject was expressly sought by the terms of that issue.

[4] Nor do we think appellant must be denied relief in the case before us on the ground that he did not, as found by the jury in answer to the sixth special issue, use such caution and diligence as an ordinarily prudent person would have exercised, in matters of this kind, to determine the quantity of land in said tract prior to the time the trade was closed. We have searched the statement of facts carefully, and the conclusion so reached by the jury can only be predicated upon the mere fact that appellant, prior to the purchase, went upon the ground and overlooked it, and failed to ascertain the exact number of acres by an actual survey. As shown in the deed, the survey was bounded and described by the meanderings of a small stream or creek and by other surveys called for, and R. E. Cox's estimate of 100 acres was so fortified by the statement of circumstances peculiarly within his own knowledge as to most reasonably induce a belief on the part of appellant that the tract contained, approximately at least, 100 acres. The parties were friends, and as stated by R. E. Cox on cross-examination, as hereinbefore quoted:

"There was no reason why he [appellant] couldn't rely upon me [R. E. Cox]; no reason why he couldn't take my judgment."

In such cases, and under such circumstances, appellant was not required by law to distrust appellee and to verify his statements by an actual survey.

In the case of Mitchell v. Zimmerman, hereinbefore cited, Zimmerman leased of Mitchell a certain tract of land represented to contain 140 acres in a good condition for cultivation, giving therefor, as part consideration, his note. Afterwards, when sued upon the note, Zimmerman pleaded and proved that in fact there were less than 50 acres in a good condition for cultivation. The court held that he was entitled to an abatement in price, notwithstanding the fact that it was proved that, previous to the contract, both Mitchell and Zimmerman were upon the premises and that Zimmerman as did appellant in the present case, "saw the place, but did not go much over it." Zimmerman by a survey could have ascertained the exact number of acres in condition for cultivation, but the court proceeded upon the theory that the owner of the premises is supposed to possess superior means of information as to the quantity of land involved in a transaction of the kind, and, in the absence of any circumstances calculated to raise a suspicion in the mind of a purchaser or lessee, he may well rely upon the representation of the owner.

In the case of City Bank v. Nat. Bank, 45 Tex. 203, it was held that the payment of a raised check to an indorser through mistake might be recovered back by paying the bank to the extent of the difference between the original check and the amount to which it is raised, notwithstanding the fact that the party paying may have had the means of knowledge. In the course of the opinion the court quotes with approval from a New York case the following words:

"On general principles, mere negligence in making the mistake is not sufficient to preclude the party making it from demanding its correction. Such negligence does not give to the party receiving the payment the right to retain what was not his due, unless he has been misled or prejudiced by the mistake. If the loss had been incurred and become complete before the payment, he should not, in justice, be permitted to avail himself of the mistake of the other party to shift the loss upon the latter."

See, also, Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808; Koontz v. Central Nat. Bank, 51 Mo. 275, cited with approval in Bone v. Friday, 180 Mo. App. 577, 167 S. W. 599; Western Cottage Piano & Organ Co. v. Anderson, 45 Tex. Civ. App. 513, 101 S. W. 1061; Stevenson v. Cauble, 55 Tex. Civ. App. 75, 118 S. W. 811; Hall v. Grayson County Nat. Bank, 36 Tex. Civ. App. 317, 81 S. W. 762; Williams v. Carroll Co., 167 Mo. 9, 66 S. W. 955.

While most of the cases just cited are cases of misrepresentation or actual fraud, we see no reason why the principle should not be applied in cases such as we have here. A gross mistake has been shown and found. Its operation is in the nature of a fraud on appellant's rights. The mistake was mutual. Whatever the good faith of the parties, appellee has been the recipient of a benefit and appellant deprived of values contrary to what was contemplated by both parties at the time. We see no reason to doubt the equity of giving to appellant the value of that for which he paid and of denying appellee the right to a profit not in fact intended to be secured by her. The judgment will accordingly be reversed and here rendered for appellant, in accordance with the measure of his damages, as we hereinafter state, to wit, it appearing by the undisputed proof that appellant actually received 84.04 acres, including all of the improvements, we think the proper measure of appellant's damages is to allow him for the value of 15.96 acres, the amount of the deficiency as found by the jury, at the rate of $47.50 per acre, as also found by the jury, upon the receipt of which

appellant will have received the equivalent, as near as the courts can award it to him, of that for which he paid, but which he did not receive.

Reversed and rendered.

### On Motion for Rehearing.

[5] Appellees, Mrs. Eddie C. Cox and R. E. Cox, present a motion for rehearing, which, in so far as it substantially presents the same contentions as were presented on original hearing, will be overruled without discussion, inasmuch as on those questions we see no reason to depart from the conclusions announced in our original opinion. They, however, further complain that, in the judgment rendered in this court in appellant's favor, the appellee R. E. Cox was included. We find this to be true. The evidence makes it very clear that R. E. Cox acted in the matter solely as the agent of his mother, Mrs. Eddie Cox, and that this fact was well known to the appellant, J. L. Barton. In view of these facts, and in view of the further fact that there is no finding of the jury upon which we could properly base a judgment against R. E. Cox personally, and no evidence which shows his relation to the mistake or misrepresentation involved to be such as to create a personal liability, we did not originally intend that the judgment should be entered against him personally, nor did we intend our opinion to so direct, and the judgment was so entered by the clerk, without specific direction to so do. The judgment as here entered in this court will therefore be in this respect corrected.

[6] Appellees further insist that, in rendering the judgment in appellant's favor, we adopted the wrong measure of damages; the insistence being that, inasmuch as there was evidence tending to show that the land which appellant gave in exchange for the Mrs. Cox 100 acres was of less actual value than as agreed upon at the time, the judgment should be reversed rather than rendered, to the end that the measure of damages might be applied in accordance with the rule announced by our Supreme Court in the case of George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456. The question so presented has occasioned us considerable difficulty. In the case of George v. Hesse, Hesse exchanged certain property owned by him for certain lands owned by George, upon which George represented there was a "gusher of water," or a strong flowing well of water, but which representation proved to be false, and Hesse sued for damages. The trial court adopted as the measure of damages the difference in value, if any, between the reasonable market value of the George lands which Hesse actually received, "without a gusher of water," and the reasonable market value of the same land "with a gusher of water." But the Supreme Court, after a review of the authorities, held that this was the wrong measure of damages; that the proper measure was the difference between the value of the property actually received by Hesse and that given by him in exchange therefor. In the case of Davis v. Fain, 152 S. W. 218, which was a case of a partial deficiency in a lot, that constituted a part of a laundry plant which had been sold by the defendant in the suit, we indicated, in reversing the judgment, that the measure of damages announced in the George-Hesse Case should be applied.

There is perhaps no very satisfactory distinction to be made on the question under consideration between the cases referred to and the one before us. We wish to say, however, that the question as to the correctness of the measure of damages was not submitted in the case of Davis v. Fain, and what we there said was in the nature of a suggestion for the guidance of the court in a new trial. In that case, too, as will be found by an examination of the record, the sale was in gross and comprehended the building, machinery, furniture, fixtures, wagons, horses, etc., belonging to a laundry business; the deficiency in the lot being of small relative value and not apparently necessary to the business plant as purchased. It was insisted by the vendors to the effect that the value of the 15-foot deficiency shown in the lot was not in fact included in the consideration paid for the property, in view of all which we made the suggestion referred to. However, as the question was not really presented, what we there said is not necessarily controlling with us now. In the case of George v. Hesse, the misrepresentation was one of quality and not of quantity. Hesse contracted for land with a gusher upon it. This he did not receive in whole or in part, for in no part of the land received did the quality contracted for inhere. An artesian well is a thing of intangible or speculative value, considered apart from the land upon which it was represented to be. Its substantial value was relative and qualitative. It arose from and was dependent upon its connection with the land there in controversy, and the value of the land in turn was largely affected by the existence or want of existence of a flowing well thereon. To undertake, therefore, to ascertain the value of either land or well separately was in great measure speculative, and the Supreme Court, therefore, evidently adopted and applied, as the most certain rule of finding the compensation of the defrauded party, the measure stated, to wit, the difference between the value of what Hesse actually gave as a whole and the value of that which he actually received. The decision evidences the effort of the court to apply to the circumstances of the case that measure of damages which would most certainly afford just compensation to the injured party, and at the same time minimize the probability of in-

justice to the party of whom complaint was made by closing the door to conjectural or speculative results. The measure adopted will doubtless lead to the most certain and satisfactory results in all cases where the false representations are of quality and adhere in and to every part of the land to which the representations relate.

But in the case before us the misrepresentation or mistake was of quantity and not of quality. The deficiency is not shown to affect any part of the land, actually received by the appellant. Nothing in the evidence shows that the relative value of the 84.04 acres actually conveyed to appellant is greater or less than it would be if the deficiency (the 15.96 acres not conveyed) was or had been added to it. Appellant received the improvements and all of the cultivated land, and these improvements and cultivated lands have all the value, so far as the evidence shows, that they ever had. Appellant's real loss is the loss of the 15.96 acres that the appellee failed to convey; and, when the value of these 15.96 acres is added to that which appellant already received, he will have substantially received that for which he contracted, and no more.

In the case of Hynes v. Packard, 92 Tex. 44, 45 S. W. 562, in a suit for a breach of warranty in conveying a less number of acres than contracted for, our Supreme Court ruled, in effect, that the damages to the complaining party should bear the same proportion to the whole purchase money as the value of the part to which the title failed bore to the value of that which he actually received, and this rule seems to have been applied in a great number of our cases. See authorities cited in 5 Encyc. Dig. of Texas Reports, p. 489.

In this respect we can see no sound reason for distinguishing between cases in which the cause of action declared upon is a breach of warranty and those, as here, where the deficiency arises by reason of a mistake. Indeed, this rule of the measure of damages was applied in this court in a case where there was a deficiency, and the right of action was expressly predicated upon alleged false representations. See Pruitt v. Jones, 14 Tex. Civ. App. 84, 36 S. W. 502. See, also, the recent case of Northcutt v. Hume, 174 S. W. 975, in which Mr. Justice Hendricks of the Amarillo Court of Appeals collates and reviews a great many authorities, saying, among other things, that, where there is a deficiency, the rule as to the measure of damages declared by the Supreme Court in the case of Hines v. Packard, supra, "is practically universal." We are by no means clear that it was not our duty to the appellant to apply this rule in his favor in this case. The effect of the findings and undisputed evidence is that appellant paid a total sum of $7,750 for the appellee Mrs. Eddie Cox's land, that the land actually received by him was worth $77.50 per acre, and that the land which he failed to receive was worth $47.50 per acre; and, had we applied the rule of proportionate value as the measure of appellant's damages, a simple mathematical calculation will demonstrate that instead of the sum of $759, which we adjudged in his favor, he would have received a greater sum. But appellant has made no complaint in this respect, and appellee certainly has no ground to complain. Nor, as we think, is it clear that they have just cause of complaint in that we failed to apply the rule of damages declared in the case of George v. Hesse, for here the agreed value of appellant's land conveyed as part of the purchase price to be paid by him was $5,000. He gave his vendor's lien note for the remainder, $2,750, for which appellee contracted to convey her 100-acre tract. We feel no disposition to disturb the value of appellant's land as thus agreed to upon a mere passing statement of the witness R. E. Cox that he did not think appellant's land was worth the amount for which it was priced. It was certainly accepted by him in behalf of his mother at the price stated; he at that time valuing his mother's tract at $7,750. If appellant's land was worth less than had been agreed upon, the inference seems irresistible that appellee's land was likewise worth less, otherwise she would have insisted on more for the exchange. So that, on the whole, we think appellee's motion, with the correction already noted, should be overruled; and, in the absence of any complaint on the part of appellant, we yet feel disposed to adhere to the measure of damages applied by us on original hearing as, under the circumstances of this case, most certainly and equitably fixing the compensation to which appellant is entitled.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

