No. 2373.

W. W. WHEELER *v.* B. E. BOYD.

1. EVIDENCE—SURVEYOR'S REPORT.—The report of a surveyor who has been appointed by the court during the progress of a suit, is admissible in evidence only in suits instituted to try title to land.

2. VENDOR AND VENDEE.—When there is a misrepresentation by the vendor, or mistake as to the quantity of land sold, and in a suit to recover the contract price the purchaser claims a deduction on account of deficiency in quantity, his right is strictly to compensation, and not necessarily to an abatement in price proportionate to the surface deficiency.

3. SALE OF LAND.—If the land is sold in gross and the quantity stated in the deed is qualified by the words "more or less," the purchaser is entitled in equity to relief, if the deficiency be great.

4. SAME.—When a vendor points out the land and shows its boundaries, pending negotiations for sale, and makes a sale in gross, each party having an equal opportunity to inform himself regarding the quantity, the purchaser can not claim an abatement of the purchase money on account of deficiency, if the vendor has neither made a fraudulent representation nor said any thing calculated to deceive an ordinarily prudent purchaser.

5. FACT CASE.—See opinion for facts under which an abatement of the contract price of land was improperly allowed.

ERROR from Shelby. Tried below before the Hon. J. G. Hazelwood.

*Horace Chilton,* for the plaintiff in error, insisted that the charge of the court below on the measure of abatement was incorrect in directing the jury to deduct from the note the amount of the deficiency in the unimproved land, according to the contract price for the whole tract. Also, that the court erred in holding that if plaintiff and defendant were mutually mistaken in regard to the number of acres, defendant could retain the land and still abate the purchase money.

*T. P. Young* and *A. J. Booty*, for defendant in error: The court correctly charged the jury on the measure of abatement; citing Mitchell v. Zimmerman, 4 Texas, 75; Walling v. Kinnard, 10 Texas, 508; O'Connell v. Duke, 29 Texas, 300.

GAINES, ASSOCIATE JUSTICE. This suit was brought by the plaintiff in error against the defendant to secure a balance alleged to be due upon a promissory note, and to enforce a lien upon a tract of land for the purchase money of which it was executed. The defendant in his special answer did not deny the execution of the note or the sale of the land, but claimed that there was a gross deficiency in the quantity of land as estimated in the transaction, and asked an abatement of a corresponding proportion of the purchase money. The plaintiff recovered a judgment but for a less sum than he claimed, and hence has sued out a writ of error to this court.

The court at the instance of defendant, but over the objection of the plaintiff, appointed a surveyor to make a survey and report the number of acres found in the tract. The surveyor having performed the work and filed his report, this was offered in evidence by the defendant and was admitted by the court. The plaintiff objected to the admission of this evidence, and saved the point by a bill of exceptions. We think the ruling of the court erroneous. Article 4800 of the Revised Statutes provides in substance, that in the action of trespass to try title, the court may either in term time or vacation, and at the instance of either party or of its own motion, appoint a surveyor to survey the premises in controversy, and that his report if not rejected for good cause shown, shall be admitted in evidence. This provision is a re-enactment of the third section of the act of February 5, 1840, which provides for the action of trespass to try title, and is a part of chapter 1, of title 96, of the Revised Statutes, which relates solely to pleading and practice in that action. There is no such provision in the original practice acts of the Congress of the Republic and of the Legislature relating to district courts, or in the corresponding chapters of the Revised Statutes, which regulates the practice of the district and county courts. The inference is clear, that no such authority was intended to be conferred upon the courts, except in suits for the trial of title to land. After the report was introduced the defendant called the surveyor and examined him concerning the survey; and the plaintiff was thereby afforded the opportunity

of a cross-examination. The defendant now insists that this cured the error in admitting the report, if error it were. But for reasons to be hereafter stated, the judgment must be reversed upon another ground, and we need not, therefore, decide whether the error was reversible or not.

The deed introduced in evidence was dated January 22, 1883, and the note bore date as of the same day, and was payable on the first day of November next thereafter, but called for interest at the rate of ten per cent per annum from January 1, 1882. The conveyance described the lands by metes and bounds, and as "containing one hundred and thirty acres more or less." The tract was bounded upon one side by a creek, and, on account of the meanders of the stream, was in a very irregular shape, and its quantity difficult of estimation. The surveyor testified that "no surveyor could tell exactly how much land there is without measuring all the curves," and that "to do it correctly would take a week." He says also, "I meandered the length of the creek by offsets. The base was on the line at right angles." He estimated, that the entire tract contained only ninety-three acres.

Defendant testified, in substance, that about January 1, 1882, he went to the plaintiff to buy the land, and that plaintiff told him there was one hundred and forty or one hundred and forty-five acres in the entire tract, and about seventy-five acres of cleared land. They agreed that defendant should take possession of the land, and cultivate it for the year 1882, and that if he paid plaintiff by the end of the year interest on the purchase money (which was fixed at eight hundred dollars), and one-half of the principal, plaintiff would execute him a deed, and take his note for the balance. If defendant should not be able to comply with these conditions, he was to pay plaintiff for the use and occupation of the premises. Defendant was not able to comply literally with the terms of the agreement, but turned over to plaintiff eight bales of cotton as a first payment, and thereupon the note and deed were executed. It would seem that plaintiff was to sell the cotton and credit the proceeds; and that this was the reason that the note was taken for the whole purchase money with interest from the time of defendant taking possession, and not merely for the balance. At the time the conveyance was being drawn, and before it was executed, plaintiff remarked "that there might not be one hundred and forty-five acres, and we will say one hundred and thirty acres.". Defendant also said, in his testimony: "At the time the deed was made

I thought the open land was short ten acres, and the entire tract short twenty acres. I thought when the deed was made that there was as much as one hundred and thirty acres in the tract. The improved land was the main inducement to me to buy at the price I paid for it. I wanted good land and open land. In the condition the open land was in it was worth ten dollars per acre."

Recurring again to the testimony of the surveyor, it is to be noted that after having sworn that there was, as he thought, about fifty-five or sixty acres of cleared land in the tract, he returned to the stand to correct his testimony, and said: "I now think, by estimating the uncleared land on the tract, there would be as much as sixty-nine acres of cleared land. The growth along the creek had been cut off, except about one acre in the bend. * * The margin along the creek is of greater or less width, but they cultivate as near the creek as they could get, and leaving out this margin on the creek, there is not more than sixty acres."

Thus it appears that appellee had been in possession and had cultivated the land for more than twelve months before the sale was finally consummated by the execution of the deed and note; that at this time he thought the cleared land fell short of appellant's estimate by ten acres. From this, it is also apparent that, when the deed was made and the note given, he thought he was getting only sixty-five acres. The deficiency in the cleared land, if any, must therefore have been very little. Now, there was no controversy about the payments on the note, and the verdict of the jury was for only one hundred and twenty-five dollars and seventy-eight cents; and counsel for plaintiff in error in argument has submitted a calculation tending to show that, in order to attain this result, the jury must have allowed an abatement for deficiency in quantity of two hundred and sixty-six dollars—leaving, accordingly, only five hundred and thirty-four dollars of the principal sum justly due on the note at the date of its execution. The calculation is substantially correct. Taking five hundred and thirty-four dollars as the original principal of the notes, and calculating the interest and deducting the credits according to the legal rule, gives very nearly one hundred and twenty-five dollars as the amount due at the date of the verdict. The defendant testified that the cleared land was the inducement to his purchase, and that it was worth ten dollars per acre. There was at least fifty-five or sixty acres of this—so that

it is apparent that the jury did not allow plaintiff as much for the entire tract as that portion in cultivation was estimated by defendant to be worth—leaving out of the account the un-cleared part, of which there was at least some thirty acres. The injustice of this result is manifest; and it would seem to have been brought about by the error in the charge which is complained of in the fourth assignment of error. In one part of the charge the court instruct the jury, in effect, that if they found a material deficiency in the quantity of land, then they would deduct the value of such deficiency, "according to the contract price, from the whole amount of the contract price, and regard the balance  *  *  *  as the real price of the land." The court then proceeds to instruct them further what to do in the event they should find there was less open land than plain-tiff represented, and says: "Then you will estimate what is the difference in the value of the °quantity of the deficiency in a condition open and tillable and the same quantity unimproved, and deduct this difference from the contract price also, and then deduct both the value of the deficiency in the entire tract and the value of the deficiency in the improved land compared with the same quantity unimproved, and find the balance, after deducting both these sums, to be the real contract price," etc.

It resulted from this that however little the value of the un-improved land may have been, the jury were directed to deduct for any deficiency in it at the average price per acre of the whole tract; and for any deficiency found by them in the improved land they were authorized to subtract not only the average price per acre, but also the difference between the value of such deficiency in an improved state and its value unimproved. The result of this instruction was to allow the defendant an abate-ment at the rate of six dollars and fifteen cents per acre for a deficiency in uncleared land which was probably estimated at about two dollars per acre. As to the land in cultivation he was allowed by this charge, not only six dollars and fifteen cents, the average contract price per acre, but also the differ-ence between the value in an improved and the value in an un-cleared state, although there was no evidence as to the worth of the latter.

It is manifest that this more than compensated defendant for the deficiency, and awarded to him the land at a less price than he was willing to pay, and at a less price than plaintiff was willing to accept, as evidenced by the terms of this agreement.

It is said by an English author: "The purchaser's right is strictly to compensation and not necessarily to an abatement of purchase money proportionate to the surface deficiency; thus where upon the sale of woodlands, the value of the timber was correctly stated but the land was represented to contain more by twenty-six acres than the actual quantity, he was allowed as compensation the estimated value of twenty-six acres, minus the wood." (Dart on Vendors, 308; Hill v. Buckley, 17 Ves., 394.) For the error in the portion of the charge which has been quoted, the judment must be reversed.

It is insisted also that if the parties to the transaction were mutually mistaken as to the quantity of the land, defendant is entitled to claim no abatement of the purchase money. The authorities are not in accord upon this question; but we think the decisions of this court recognize that save in a case where the land is sold in gross and the quantity stated in the conveyance is qualified by the words "more or less," the purchaser will be relieved in equity, if the dificiency be great. The disparity being gross between the quantity believed by both parties to exist, and that which is found actually to exist, and both having been mutually mistaken, and the quantity being a material element of inducement in the sale, it is but equitable to let the purchaser retain his bargain and to relieve him from payment for that which he does not get. (O'Connell v. Duke, 29 Texas, 299; Smith v. Fly, 24 Texas, 345; Walling v. Kennard, 10 Texas, 508; Mitchell v. Zimmerman, 4 Texas, 75.)

We are also of opinion that, in this case, as to the land in cultivation, the evidence does not show such a deficiency as to warrant any abatement of the price on that account. The defendant admits in his testimony that before the trade was finally closed he did not rely upon plaintiff's representation that there was seventy-five acres of cleared land. He believed before the deed was executed that the amount was ten acres less. Now, plaintiff's representation can not be treated as a warranty. This is a written contract, and there can be no warranty except such as is expressed in the deed. He can claim an abatement only for fraud or mutual mistake. Even if plaintiff had intended to mislead him, he was not misled as to this matter to the extent of believing that there was seventy-five acres, nor did he have such belief resulting from mistake. Besides, he occupied the land a year before the sale, with a view to its purchase, and, as we infer from the testimony, lived upon it and cultivated it

in person.  His attention had been called to the qustion of defi-
ciency in the cleared land, and his opportunity of knowing the
quantity would seem fully equal to that of plaintiff.  According
to the surveyor who was defendant's own witness, there were
sixty-nine acres in the field, as was shown by the imperfect
measurement which he made; and, it seems. to us, there is no
good reason for excluding from the computation the margins
along the creek, in a case of this character.

The plaintiff asked the court to charge the jury in effect "that
if the land was sold by the tract, and defendant had equal op-
portunity with Wheeler to know the amount of land before he
took his deed, and was required by Wheeler to judge for him-
self as to the quantity, then defendant took the risk of defi-
ciency."  This charge was refused, and its refusal is also as-
signed as error.  We think the assignment is not well taken.
There is no testimony that defendant was required to judge for
himself as to the quantity, and we think the charge would have
been error.  Ordinarily, when the vendor points out the land
and shows the boundaries, and makes a sale in gross, each party
having an equal opportunity to inform himself as to the quan-
tity, the vendee can not claim an abatement of the purchase
money by reason of a deficiency.  But we think, if the pur-
chaser be misled by a fraudulent representation, or even one
innocently made, if it be such as an ordinarily prudent man
would rely upon under all the circumstances, and the number of
acres represented be grossly in excess of the actual quantity, he
should have relief.

The tenth assignment is, in effect, that because there was no
evidence to show the value of the unimproved land, the jury did
not have the data from which to estimate the value of the
shortage.  From what we have already said it is apparent that,
if defendant is entitled to any abatement, in order properly to
estimate the amount, there should be evidence showing the value
not only of the improved land, but also of that which was un-
cleared.  If these parcels were not severally estimated at the
time of the transaction, the contract price of each should be esti-
mated according to their respective values at the date of the
deed.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered December 6, 1887.