BROWN v. YOAKUM et al. (No. 5320.)†

(Court of Civil Appeals of Texas. San Antonio. Oct. 21, 1914. On Motion for Rehearing, Nov. 18, 1914.)

1. COVENANTS (§ 47*)—WARRANTY—EFFECT.

A general covenant of warranty does not include a warranty of the quantity of land conveyed, unless the property is sold by the acre and the quantity warranted.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 47; Dec. Dig. ·§ 47.*]

2. VENDOR AND PURCHASER (§ 176*)—CONVEYANCES—DEFICIENCY.

In the absence of a warranty of quantity, there can be no reduction of the purchase price for a deficiency in the quantity unless there is proof of fraud or mistake; but, where there has been fraud or mistake in the representations as to quantity made by the vendor and they

---

have been relied on, reduction for deficiency must be allowed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 333–340; Dec. Dig. § 176.*]

3. VENDOR AND PURCHASER (§ 44*)—REMEDIES OF PURCHASER—ACTIONS—EVIDENCE.

Where purchasers of land claimed to have relied upon the grantor's representations as to the quantity conveyed, evidence *held* to show such representations and reliance thereon by the purchasers.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 69–76; Dec. Dig. § 44.*]

4. EVIDENCE (§ 238*)—ADMISSIONS—EFFECT.

Where a purchaser of land sold all of his interest to defendants, who assumed payment of the unpaid purchase money, the purchaser's admissions that he did not rely upon his grantor's representations as to the quantity of land conveyed, etc., are binding only upon himself and not upon defendants.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 883; Dec. Dig. § 238.*]

On Motion for Rehearing.

5. PRINCIPAL AND AGENT (§ 94*)—REPRESENTATIONS OF AGENT.

Where two united in purchasing a tract of land, representations as to quantity by the vendor's agent to one of the purchasers, who was acting for both, are representations to both.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 248, 249; Dec. Dig. § 94.*]

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by E. N. Brown, as trustee, against B. F. Yoakum and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Greer & Hamilton, of Laredo, for appellant. Jas. B. Wells, of Brownsville, John A. Valls, of Laredo, and Harbert Davenport, of Brownsville, for appellees.

FLY, C. J. This is a suit by appellant, as president and trustee of the National Railroad Company of Mexico, against D. B. Chapin, W. F. Sprague, John Closner, and B. F. Yoakum, to recover judgment on three promissory notes executed by D. B. Chapin to appellant, each for $16,481, with interest at 6 per cent. from September 1, 1909, and 10 per cent. attorneys' fees, and to foreclose a vendor's lien on 14 surveys of land situated in Hidalgo county, Tex. It was alleged that Sprague, Closner, and Yoakum had acquired the land on which the lien rested. Yoakum answered by general demurrer and general denial. Chapin admitted the cause of action, and alleged that he had sold the land to Sprague and Closner, and that they had assumed payment of the amount of the notes, and prayed for judgment over against them. The answer of Sprague and Closner consists of 26 typewritten pages, in which most of the facts connected with the case were pleaded, the whole amounting to a plea that appellant had fraudulently represented that there were 14 surveys of land, among the number being two numbered 255 and 257,

represented to contain 1,264.1 acres; that said two surveys had no existence; that appellant had released in writing his vendor's lien upon all of the land except surveys 255 and 257; that they tendered a deed to said surveys to appellant and prayed for cancellation of the notes and for judgment for the amount paid by them on said surveys 255 and 257. Appellant filed three supplemental petitions denying the fraud alleged, and pleaded mutual mistake in making the release of the vendor's lien on all the land, except surveys 255 and 257; that appellees knew of the conflict of older surveys with the two surveys and assumed the risk of the title thereto. The cause was submitted to the court and judgment rendered that appellant take nothing by his suit, that the notes be canceled, and that Sprague and Closner recover of appellant the sum of $2,528.20.

The evidence justifies the conclusion that the land was sold to appellees Chapin and Closner, the deed being made to Chapin, by the acre, and that it was represented to them that the two surveys, 255 and 257, were in existence, that appellant knew that the two surveys were in conflict with older surveys, or could have known by the exercise of diligence. The conflict is admitted by appellant in his brief. Appellant released the vendor's lien on all of the other surveys sold by him to Chapin and Closner.

[1-3] The deed given by appellant to Chapin contained no general warranty clause, and it is the contention of appellant that appellees accepted all hazard and risk as to the title to the two surveys and could not set up a failure of title to the two surveys to defeat the collection of the notes sued on. If there had been a covenant of general warranty in the deed, it would not include a warranty of the quantity of land conveyed, unless it affirmatively appeared that it was sold by the acre and the quantity warranted. Smith v. Fly, 24 Tex. 345, 76 Am. Dec. 109; Weir v. McGee, 25 Tex. Supp. 20; Daughtrey v. Knolle, 44 Tex. 451; Rich v. Ferguson, 45 Tex. 396. Whether the deed contains a general warranty or not, in the absence of a warranty for quantity as well as for title, there can be no reduction of the purchase price for a deficit in quantity, unless there is proof of fraud or mistake. Where there has been fraud or mistake in the representations made by the vendor as to the quantity of land conveyed by him, the rule is that the purchase price will be diminished in proportion to the deficit in acreage, in a court of equity.

In the cited case of Smith v. Fly, it was held:

"It appears to be well settled that, in the sale of land, where there has been misrepresentation as to the quantity, though innocently made, and the parties were under a mistake as to the quantity, and the deficiency is so great as to have been material, in the object of the pur-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

chase, affecting the essence of the contract, equity will grant relief."

This rule has often been approved in Texas. O'Connell v. Duke, 29 Tex. 300, 94 Am. Dec. 282; Moore v. Hazlewood, 67 Tex. 624, 4 S. W. 215; Wheeler v. Boyd, 69 Tex. 293, 6 S. W. 614; Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700; Lancaster v. Richardson, 13 Tex. Civ. App. 682, 35 S. W. 749; Wuest v. Moehrig, 24 Tex. Civ. App. 124, 57 S. W. 864; Barnes v. Lightfoot, 26 Tex. Civ. App. 113, 62 S. W. 564; Yates v. Buttrell, 132 S. W. 831; Id., 149 S. W. 347.

The matter of special or general warranty cuts no figure in this case, for the action is not based on a breach of warranty, but is an effort to obtain relief from payment of certain purchase money sued for by appellant. As said by the court in Moore v. Hazlewood, cited herein:

"That the land was conveyed with special warranty is of no importance, for this action is not based on any breach of warranty."

The court further said:

"The defense is one which may be urged at any time when the vendor seeks to collect the purchase money that would be due had the contract not been made under mutual mistake as to a matter which must have influenced the making of it."

However innocent appellant may have been in his representations as to the number of acres, that would not relieve him of liability, if the vendees relied upon such representations and were induced thereby to take the land. Of course, if there had been evidence showing that appellees took the risk as to the quantity of land, they could not recover; but the mere fact that they accepted a deed without a general warranty did not prove that such risk had been taken. The evidence, on the other hand, tended to show that the vendees expected to get the full acreage paid for by them and relied on the representations of the vendor as to the acreage.

The cases cited by appellant do not meet the facts of this case. There is no question but that, if the vendee knows all the facts and accepts a tract of land, he cannot recover on account of the representations made by the vendor. That is all that is held in Hawkins v. Wells, 17 Tex. Civ. App. 360, 43 S. W. 816; McIntyre v. De Long, 71 Tex. 86, 8 S. W. 622; Elder v. Bank, 42 S. W. 124; and Warner v. Munsheimer, 2 Willson, Civ. Cas. Ct. App. § 393. In this case the evidence showed that the representations of the agent of appellant, who was a skillful surveyor and had just surveyed the lands, induced Chapin and Closner to take the two surveys. They had heard of a conflict, but the surveyor assured them there was none.

Appellant treats this case in the first and second assignments of error as though it was one on a warranty, which it is not, but is one founded in mutual mistake, or fraud upon the part of appellant, in consideration of which an abatement of the unpaid purchase money and a return of certain money already paid is prayed for.

The third, fourth, fifth, sixth, and seventh assignments are disposed of by the conclusion of this court that the vendees were induced to take the land by the representations made by appellant, and by the fact that the land was bought and was to be paid for by the acre.

[4] Chapin had disposed of all of his interest in the lands to appellees, and the debts to appellant had been assumed by them, and Chapin's confessions and admissions could not bind or affect them. He could only speak for himself, and could not destroy legitimate defenses of his vendees by any admissions The law places no such terrible weapon in the hands of a vendor and does not give him the means of inflicting incalculable injury on the persons he should endeavor to protect. The testimony of Chapin shows that his admissions should never have been made, because not well founded. He swore to facts that established the misrepresentations of appellant, and he could not prejudge the case of his vendees.

The tenth, eleventh, twelfth, and thirteenth, assignments of error are overruled. The evidence fully sustains the validity of the release of the vendor's lien against all of the surveys except 255 and 257, and, if it did not, it could not remove the fact that there had been misrepresentations as to the acreage.

Appellees having paid $2 per acre on the two surveys, 255 and 257, were entitled, under the evidence, to recover that amount from appellant, and it follows that the court did not err in rendering judgment for appellees in the sum of $2,528.20.

The judgment is affirmed.

## On Motion for Rehearing.

[5] Appellant insists that Closner knew nothing about the conflict of the surveys until 1911, and yet the statement of facts contains a letter written by Chapin about a conflict in 1908, and he swore positively:

"It is a fact that I knew on the date of the July contract, 1908, or shortly thereafter, that there was a contention that surveys 255 and 257 were in conflict with the Mestenas grant. I knew of the alleged conflict on or before January 18, 1909. I tried to prevail upon De Wolf at the time of taking the second option to leave out of the option sections 255 and 257, on the ground of their being in conflict with older surveys, and De Wolf told me that he would not sell part without selling all, but assured me that we were mistaken in regard to the conflict. * * * I remember the facts connected with this extension agreement dated January 18, 1909, and it is a fact that both Closner and myself at that time knew of the alleged conflict of surveys 255 and 257 with an older grant. We proceeded with said option contract of January 18, 1909, after we knew of the alleged conflict of surveys 255 and 257, because we were assured by Mr. De Wolf that there was no actual conflict."

Who was De Wolf? He was an expert surveyor and agent of appellant, who had re-

cently surveyed the lands, and whose accuracy of statement as to any conflict in the surveys could be implicitly relied upon by Chapin and Closner. Still, in the face of the evidence, it is asserted that the conclusion of this court that Closner relied upon the representations of De Wolf is unwarranted, "in that such finding and holding is without evidence to support it, and is contrary to the established facts, in this, that Closner testified that he never heard of the conflict until about a year and a half before the trial." The uncontradicted evidence showed that Chapin was acting for Closner in the purchase of the land, and representations made to him which induced the trade were representations made to both. Chapin testified that Closner knew about the conflict in January, 1909, as hereinbefore shown. The trade was made with Closner and Chapin, and not with Sprague. Both Closner and Chapin signed the agreement extending the option. It would not matter whether Closner knew of the conflict or not, if Chapin, who was acting for him, did. If Closner did not know of the conflict, he should not be held liable for the two sections which appellant knew he had no title to when he sold it.

Although contending in the first clause of the motion for rehearing that Closner knew nothing of the conflict when the land was purchased, in the third clause appellant insists that knowledge on the part of Chapin of the conflict was the knowledge of both. If that be true, the representations made by De Wolf to Chapin that there was no conflict were representations made to both. The principle is elementary.

The motion for rehearing is overruled.