## LEO SHEEP CO. v. DAVENPORT.
(No. 1846.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 26, 1921. Rehearing Denied Nov. 23, 1921.)

1. Landlord and tenant ☞231(7)—Evidence held to sustain finding that pasture contained land leased.

In an action for rent, where defendant counterclaimed on ground of a shortage in acreage, an assignment that the court erred in finding that the leased premises contained approximately the amount specified in the lease *held* without merit, in view of the fact that the land was capable of exact ascertainment and defendant did not introduce satisfactory proof thereof.

2. Landlord and tenant ☞127—Lessee entitled to immediate possession in absence of other showing.

Under a lease of pasture lands making no provision concerning the removal of 1,000 cattle belonging to the lessor, lessee was entitled to the possession, use, and enjoyment of the entire premises from the date of the lease, in the absence of allegation and proof showing otherwise.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Landlord and tenant ⟜231(6)—Evidence held not to sustain finding as to acreage in feed crops.**

In an action to recover rentals under a lease of pasture lands, court's finding as to total acreage in feed crops *held* not supported by the evidence.

**4. Landlord and tenant ⟜211(1)—Rule as to shortage in land leased.**

One leasing pasture lands of "about 14,700 acres" should be relieved of payment of part of rental if through mutual mistake there was a great disparity as to the acreage.

Error from District Court, Bailey County; R. C. Joiner, Judge.

Action by F. Davenport against the Leo Sheep Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Roscoe Wilson, of Lubbock, for plaintiff in error.

P. B. Randolph and C. H. Curl, both of Plainview, for defendant in error.

HALL, J. Defendant in error sued plaintiff in error company to recover a balance of $2,000, alleged to be due upon a lease, and the further sum of $108, for feed which it is alleged plaintiff in error purchased. A writ of attachment was sued out and levied upon 300 sheep belonging to plaintiff in error. Plaintiff in error answered by general demurrer, general denial, and by way of cross-action alleged that early in October, 1919, defendant in error, through his agent, Ansley Land & Cattle Company, represented to its president that defendant in error had about 15,000 acres of land in Bailey county for lease; that the premises were well improved and had 2,540 acres of growing feed crops thereon; that plaintiff in error's president, defendant in error, and B. T. Ansley drove around the pasture, which was represented to contain about 15,000 acres. It was further represented that all feed crops then growing on 2,540 acres were in good condition; that at said time there were 1,000 cattle in the pasture which defendant in error agreed should be moved from the land the day following the execution of the contract. A written lease was executed by the parties, which recites in part that the premises consist of "about 14,700 acres," for which defendant in error should pay $12,000, as follows: "$10,000 cash in hand paid, the receipt of which is hereby acknowledged, and the balance by December 31, 1919." Plaintiff in error further alleged that, relying upon the representations above set out, it paid the $10,000 and shipped 12,000 sheep from Wyoming, to be wintered and fed on said ranch; that defendant in error failed and refused to remove the 1,000 cattle until the 10th day of Novem-

ber, 1919, to its damage in the sum of $2,-000; that there were only 1,636 acres of feed crops upon the land, whereby it was damaged in the sum of $3,189.12; that there was a shortage of about 1,200 acres in the entire ranch, whereby it was damaged in the sum of $240. Other minor items of damages are claimed, which will not be stated. A trial before the court without a jury resulted in a judgment for defendant in error in the sum of $2,000 and for plaintiff in error on its cross-action in the sum of $79.65.

The matters in controversy are presented here under eight assignments of error, six of which complain of the insufficiency of the evidence to support the court's findings of fact; the remainder being criticisms of the conclusions of law.

[1] Under the first assignment it is insisted that the evidence does not support the court's finding that the leased premises contained approximately 14,700 acres. It appears that no survey was made of the entire premises. In other words, the boundary lines of the various tracts shown upon the plot were never run out to ascertain the amount of acreage included. This could have been easily done. A surveyor was employed, who undertook to ascertain the amount of cultivated land upon which crops had been grown. His testimony even in this particular is very unsatisfactory. The lands included in the leased area are parts of several leagues allotted to various counties for public school purposes, and the plot would indicate that these leagues have been subdivided into labors. If it be admitted that each subdivision contained 174 acres, then the original estimate of 14,700 acres is not far from correct. On the other hand, the contention is that all of the lands shown in the plot were not included within the ranch fences: This being the state of the record, we cannot sustain this assignment and should not do so where the matter is capable of exact ascertainment.

[2] The lease does not provide when the 1,000 cattle should be removed from the pasture. The writing was executed October 14th, and in the absence of allegation and proof showing otherwise, plaintiff in error was entitled to the possession, use, and enjoyment of the premises from that date. The evidence is conflicting upon the issues as to when the cattle were to be removed and when they were actually taken off and is sufficient to sustain the court's finding upon both points.

[3] We think the assignment with reference to the sufficiency of the evidence to support the court's finding that the total acreage in feed crops approximated 2,300 acres should be sustained. In arriving at the number of acres it seems the trial judge accepted the testimony of defendant in error, wherein he gives the number of acres in cul-

tivation upon the several different tracts constituting the ranch. On cross-examination, however, he testified as follows:

"Now as to the total acreage of that 14,700 that was in cultivation, I don't know the amount, never figured it up, but about 2,000 acres. I would say maybe 2,200 acres."

This, of course, precludes the idea that he was correct in his first estimate where he undertook to give the acreage of the crops growing upon the several subdivisions. L. E. Vivion, plaintiff in error's president, testified with reference to this issue as follows:

"The acreage actually in cultivation in feed crops was a little over 1,600 acres, and my way of arriving at that acreage is by surveying it. I had a surveyor to survey it. I was present when the surveyor surveyed it. I carried the chain. I surveyed three years for the government in Wyoming. I never surveyed any in Texas. As to my knowing anything about the vara measurement, I can figure it out after I get the distance. There were something like 1,600 acres actually in cultivation in feed crops—1,636 I think it was, though I am not positive."

John McKenzie, who worked on the farm during the year the crops were grown, testified upon this point as follows:

"There was approximately about 2,500 acres in cultivation at the time possession of the property was delivered to Vivion, and about 1,600 acres had crops on it."

B. T. Ansley testified that when the land was listed with him to be leased it was described as consisting of 15,000 acres of land; "of that about 2,500 acres was represented to be in cultivation." He further testified that after the parties had visited the ranch and returned with him to his office in Amarillo, he did not hear all of their conversation leading up to the execution of the contract, but with reference to the negotiations in his office he testified as follows:

"Now, with reference to the conversation and discussion of the crops before the execution of the contract, the substance of it, they talked a good deal with reference to the acreage. There was about 2,500 acres; about 2,000 acres to maize; about 500 acres of cane and kaffir corn. That was what Mr. Davenport said."

Mr. Davenport denied making any representation as to the acreage of the crops, and Vivion testified that Davenport stated to him that 2,540 acres of feed crops were then growing and in good condition on the ranch. It is clear that the court's finding that the acreage of the crops amounted to 2,300 is not supported by the evidence. It would seem that the best evidence of the amount of this acreage is that of Vivion, the surveyor Carpenter, and his chain carrier, though the testimony of the last two witnesses is confusing.

[4] In view of another trial we call attention of the court and counsel to the rule in this state with reference to deficiency in the quantity of land, whether sold or leased in gross or by the acre, and which is, as declared in Wheeler v. Boyd, 69 Tex. 293, 6 S. W. 614, as follows:

"It is insisted, also, that if the parties to the transaction were mutually mistaken as to the quantity of the land, defendant is entitled to claim no abatement of the purchase money. The authorities are not in accord upon this question, but we think the decisions of this court recognize that even in a case where the land is sold in gross, and the quantity stated in the conveyance is qualified by the words, 'more or less,' the purchaser will be relieved in equity if the deficiency be great. The disparity being gross between the quantity believed by both parties to exist and that which is found actually to exist, and both having been mutually mistaken, the quantity being a material element of inducement in the sale, it is but equitable to let the purchaser retain his bargain and to relieve him from payment for that which he does not get. O'Connell v. Duke, 29 Tex. 299; Smith v. Fly, 24 Tex. 345; Walling v. Kinnard, 10 Tex. 508; Mitchell v. Zimmerman, 4 Tex. 75." Paschall v. Penry, 82 Tex. 673, 18 S. W. 156.

For the error pointed out, the judgment is reversed, and the cause remanded.

---

🔑For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes