**FOSTER v. HOPKINS et al.**

No. 4362.

Court of Civil Appeals of Texas. Texarkana.

Dec. 21, 1933.

Rehearing Denied Jan. 4, 1934.

Chester Johnson and Allred & Brown, all of Henderson, for appellant.

Chauncey & Chauncey, of Longview, for appellees.

SELLERS, Justice.

Appellant, who was the plaintiff in the case, brought the suit to establish his ownership of an oil and gas lease, and to quiet title thereto, upon the south 8 acres off the west 59 acres of a tract of land described in various deeds as "173 acres, more or less," owned by appellee Mrs. Pet Hopkins, in the W. H. Castleberry Headright survey in Gregg county. By amended petition, the plaintiff stated his cause of action in three counts, the first count being in trespass to try title to the oil, gas, and minerals in place under the south 8 acres off the west 59 acres of a tract of land described by metes and bounds. The second count, being in the alternative, was, in substance, to establish the right of the plaintiff to an oil and gas lease upon the 8 acres claimed in the suit, and to establish the payment of the annual rental coming due thereunder on May 20, 1931, and seeking reformation of the original lease under the allegations of misrepresentation and mutual mistake as to the true agreement as to the annual rental payable under the lease. The third count, stated in the alternative to the first and sec-

ond counts, sets up substantially the same facts as the second count with the addition thereto that the tract of land in the original lease actually contained 159 and a fraction acres of land, and that for more than twenty-five years a certain marked-tree line and fence had been established and recognized as the south boundary line and the dividing line separating the Pet Hopkins tract from the land to its south, and specially pleading title in J. B. Doby under the three, five, and ten years' statutes of limitation to all land south of the marked-tree line and fence, thereby reducing the land actually conveyed by the lease to less than 173 acres and more than 159 acres, and the yearly rental to less than $173 and not more than $159. The amended petition is here referred to for more particular statement.

The defendants Mrs. Hopkins and husband answered by general denial, plea of not guilty, and specially denying any misrepresentation or mutual mistake as to the annual rental being the specific sum of $173, and alleging that the plaintiff had wholly failed to pay the annual rental or commence drilling a well prior to the stipulated time of May 20, 1931, and that by reason thereof the defendants exercised their right to declare the lease upon the 8 acres fully terminated. They further pleaded that the plaintiff's claim constituted a cloud upon their title, and sought judgment canceling the lease and removing the cloud as to the 8 acres.

The defendant Guiberson adopted the pleading of Mrs. Pet Hopkins, and further set up that he had acquired a mineral deed to an undivided one-fourth interest in the oil and gas and also an oil and gas lease of the 8 acres, paying good and valuable consideration for each without any knowledge of the plaintiff's claim as asserted by this suit.

Trial was had before a jury, and the jury returned into court their answer to the special issues submitted by the court. The court entered judgment that the plaintiff take nothing by his suit, and that the defendants be quieted in their title to the 8 acres. The plaintiff has appealed from the judgment.

It appears in the evidence that on May 20, 1930, Mrs. Pet Hopkins and her husband executed a written lease to B. A. Skipper upon the following described land for exploration and the production of oil:

"All that certain lot, tract or parcel of land situated in Gregg county, Texas, a part of the W. H. Castleberry H. R. Survey about 8 miles N. W. of Longview, Texas: Beginning at the

N. E. corner of the J. M. Tuttle 50-acre tract purchased from Leon Smith. Thence S. 955.5 W. to the S. E. corner of said 50 acres. Thence E. 1024.5 vrs. to a corner on Hawkins Creek. Thence North with the meanderings of said creek about 955.5 vrs. to the S. E. corner of the S. E. Davis 97-acre tract. Thence W. 1024.5 vrs. to the place of beginning, containing 173 acres of land, more or less."

The lease was to be for the "term of five years from this date, and as long thereafter as oil, gas or other mineral is produced from said land hereunder," subject to the provision:

"4. If operations for drilling are not commenced on said land on or before one year from this date the lease shall then terminate as to both parties, unless on or before such anniversary date lessee shall pay or tender to lessor or to the credit of lessor in the First National Bank at Longview, Texas, the sum of One Hundred and Seventy-Three Dollars ($173.00), herein called rental, which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. * * * In this connection the above-described premises shall be treated as comprising 173 acres, whether there be more or less."·

"7. The rights of either party hereunder may be assigned in whole or in part and the provisions hereof shall extend to the heirs, successors and assigns, but·no change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of lessee. * * * In event of assignment of this lease as to a segregated portion of said land, the rentals payable hereunder shall be apportionable as between the several leasehold owners ratably according to the surface area of each, and default in rental payment by one shall not affect the rights of other leasehold owners hereunder."

On January 21, 1931, Mrs. Pet Hopkins and her husband conveyed by deed to S. A. Guiberson, Jr., "an undivided one-fourth interest in and to all the oil and gas under and that may be produced from the following described land" (here follows description of a tract containing 173 acres, more or less).

On May 20, 1930, B. A. Skipper executed a written assignment and transfer to W. W. Lechner of the lease and rights thereunder describing the land as in original lease by metes and bounds and as containing 173 acres of land, more or less. W. W. Lechner, on September 15, 1930, executed a written assignment and transfer to J. E. Farrell of the lease

and rights thereunder in the land describing it by metes and bounds as in the original lease and as containing 173 acres, more or less. J. E. Farrell, on November 26, 1930. executed a written assignment and transfer to the Shell Petroleum Corporation of "the East 100 acres out of the above described 173-acre tract." J. E. Farrell further, on January 15, 1931, executed a written assignment and transfer to Frank R. Foster of "the West seventy-three acres of the above described land" (of the particularly described 173 acres, more or less). Frank R. Foster on January 29, 1931, executed a written assignment and transfer to R. L. Foree of "The North thirty-one and one-half (31½) acres of the West Seventy-three acres of the above described tract of land" (the tract described as 173 acres, more or less). R. L. Foree on May 4, 1931, executed a written assignment and transfer to Shano Oil Company of "The North thirty-one and one-half (31½) acres of the West Seventy-three (73) acres of the above described tract of land" (the tract described as 173 acres, more or less). Frank R. Foster on April 24, 1931, executed an assignment to Rosser & Pendleton, Inc., of "One half undivided interest in the oil and gas lease in so far as it covers the South 25.5 acres of the North 51 acres of the West 59 acres." Frank R. Foster on April 10, 1931, executed a written assignment and transfer to the East Texas Refining Company of "An undivided one fourth (¼) of all right, title and interest of the original lessee and present owner in and to the lease and rights thereunder in so far as it covers the South 25.5 of the North 51 acres of the West 59 acres." All the assignments were timely registered.

It was proven that the annual rental due to be paid on May 20, 1931, the first year after the execution of the lease on May 20, 1930, was paid to Mrs. Pet Hopkins and her husband as here set forth: April 24, 1931, Rosser & Pendleton, Inc., paid $21.04 as "lease rental to 5/20/32 on S. 25½ acres of N. 51 acres of W. 59 acres of land described in Lease Record, Vol. 4, p. 328, O & G Lease Record, Gregg County, Texas"; also on April 24, 1931, Rosser & Pendleton, Inc., paid $7.01 to S. A. Guiberson, Jr. April 23, 1931, the Shell Petroleum Corporation paid $75 as "lease rental to 5/20/32 on 100 acres, part W. H. Castleberry Survey, Gregg County, Texas"; also the Shell Petroleum Corporation on April 23, 1931, paid $25 to S. A. Guiberson, Jr. April 14, 1931, the Shano Oil Company paid $31.50 as lease rental to Mrs. Hopkins and husband, and S. A. Guiberson, Jr., on "31½ acres W. H. Castleberry H. R. S. from May 20, 1931, to May

20, 1932." No other rental for the year appears to have been paid besides the total of $159.55 stated above.

On September 12, 1931, Mrs. Pet Hopkins and her husband executed a written lease to S. A. Guiberson, Jr., of the land described for production of oil: "The South 8 acres off of the West 59 acres" (here follows description). This leased land is located in the neighborhood of the Lathrop oil discovery well, which came into full flow in January, 1931. Immediately upon the execution of the lease, Mr. S. A. Guiberson, Jr., began drilling on the 8 acres and brought in an oil-producing well. It is claimed by the plaintiff, Frank R. Foster, that this 8 acres of land is covered by his lease which was prior, valid, and in full force at the date of the lease of S. A. Guiberson, Jr.

The jury made answers to the issues submitted, in effect, that at the time of the execution of the lease by Mrs. Pet Hopkins and her husband to B. A. Skipper: (1) The parties "believed the tract of land covered by the lease contained 173 acres"; (2) the parties "understood that the yearly rental after the first year would be one dollar per acre"; (3) "the lessors represented to B. A. Skipper that the tract of land covered by the lease contained 173 acres"; (4) "the sum of $173.00 was placed in the lease as the yearly rental with the parties thereto understanding that there was 173 acres in the tract of land and that the yearly rental was to be one dollar per acre"; (5) "that it was mutually agreed and understood between John T. Hopkins and B. A. Skipper that the annual rental for the lease should be $173.00." Further findings: (1) That the tract of land described in the original lease actually contains 159.35 acres; (2) that the written lease from Mrs. Pet Hopkins and husband to B. A. Skipper "correctly represents the agreement of the parties thereto"; (3) that "a preponderance of the evidence" establishes the fact to be "that it was mutually agreed and understood by and between the defendant John T. Hopkins and B. A. Skipper at the time the oil and gas lease in question was executed by them that the annual rental on said lease should be $173.00"; (4) that according to "a preponderance of the evidence" shown, "B. A. Skipper understood at the time of the execution of the lease, that the annual rental on said lease would be $173.00"; (5) that S. A. Guiberson, Jr., at the time of the conveyance to him of the mineral rights on January 31, 1931, and of the lease to him on September 12, 1931, had not "any notice of any agreement by and between Pet Hopkins and her husband as lessors and B. A. Skipper as lessee, other than as is provided in the lease"; (6) but that S. A. Guiberson, Jr., at the date of the lease to him on September 12, 1931, "knew that Frank R. Foster was claiming to own the original lease so far as same covered the premises described in the lease to S. A. Guiberson, Jr." The findings made by the jury are here approved as the facts of the case, the same having evidence to support them.

It is insisted by plaintiff that the court erred in not awarding him the title to the 8 acres in question, because the yearly rental of the leased land after the first year was to be $1 per acre, and that mutual mistake existed as to the number of acres contained in the land described being 173 acres, and that since the tract only actually contained 159.35 acres, and as $159.55 was paid to and received by lessors as yearly rentals due on May 20, 1931, the said amount of $159.55 effectually paid the entire rentals coming due on the land leased, keeping the lease in full force and effect as to all acreage covered by its terms. The point is founded on the theory that the transaction was a lease by the acre and not in gross, and there was mutual mistake of the quantity stated of 173 acres, and therefore an abatement of the lease price was justified. It is a settled proposition, as quite forcibly and clearly stated in appellant's brief, that where land is sold by the acre, a vendee, and as truly a lessee, is entitled to an abatement out of the purchase price for so much as the quantity falls short, where there is misrepresentation by the vendor, or the vendor and vendee are under a mutual mistake as to the quantity of the land conveyed. Wheeler v. Boyd, 69 Tex. 293, 6 S. W. 614; Franco-Texan Land Co. v. Simpson, 1 Tex. Civ. App. 600, 20 S. W. 953; Ray v. Barrington (Tex. Civ. App.) 297 S. W. 781; Reid v. Byrd (Tex. Civ. App.) 34 S.W.(2d) 305, and other cases. But the rule may not be, it is concluded, held applicable to the circumstances of this case, as they are reflected by the answers of the jury and the contractual stipulations of the written lease. The trial court, as must be presumed from the judgment entered, gave the effect to the answers of the jury as a whole in connection with the written stipulations in the lease, of being that the parties to the original lease believed at the time there were 173 acres in the tract and computed the amount of the annual rental of the land on that quantity of acreage at the rate per acre of $1, but that the parties mutually intended and agreed to have and to place the annual rental at the total sum of $173 computed on the quantity of 173 acres at

all events, notwithstanding the quantity so stated was less or greater than the actual area. That the transaction was a lease in gross, and not by the acre. It is concluded the construction given could be reasonably placed on the verdict and the terms of the lease, and it is here followed.

The original written lease describes a tract and designates the number of acres as "173 acres, more or less." And by express stipulation of the parties thereto "the lessee shall pay the lessor or to the credit of the lessor in the First National Bank 'of Longview, Texas, the sum of One Hundred and Seventy-three Dollars ($173.00), herein called rental. ʺ *. * In this connection the above described premises shall be treated as comprising 173 acres, whether there be more or less." The jury made the finding that the original written lease "correctly (meaning in point of fact) represents the agreement of the parties thereto," and that it was "mutually agreed and understood" by the parties that the annual rental payable for the land "should be $173.00," and that "B. A. Skipper (the original lessee) understood at the time of the execution of the lease that the annual rental on the lease should be $173.00." The lease and the agreement of the parties would then go to show a lease of the land in gross, and that the parties intended to have the rental computed on the quantity stated at all events at the rate of $1 per acre. That the quantity stated of 173 acres should determine and fix the total sum of the annual rental payable for the tract of land, notwithstanding the quantity stated be "less" or "more" than the actual area. So that in the circumstances stated there does not appear either misrepresentation or mutual mistake, present and entering into the fixing of the total sum of the annual rental at the precise amount of $173. Consequently the total sum of $173 as fixed would become the amount of the annual rental payable for the lease of the tract of land regardless of the discrepancy in the area.

There was failure and default on the part of the plaintiff to pay, as conclusively appears, his proportional annual rental due to be paid the lessors by the terms of the lease in order to keep his lease in full force and effect. Such failure and default in the timely payment may not in the circumstances be rested upon any uncertainty or misrepresentation or mutual mistake as to the total sum fixed as the annual rental payable and the time when it became due and payable. The mere fact that the field notes of the land described surveyed out a less acreage than 173 acres, and not more than 159.35 acres, would not establish a cause of action in favor of plaintiff for proportionate abatement of the rental price. This is the vital point determining the controversy in the case.

All assignments of error are here overruled as not warranting a reversal of the judgment.

The judgment is affirmed.