**In re INTERDEVELOPMENT, INC., Debtors.**

**Jason R. Searcy, Plaintiffs,**

**v.**

**Roy Roger Conn, et al., Defendant.**

**Bankruptcy No. 95–60912.
Adversary No. 96–6031.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

March 31, 1999.

Jason R. Searcy, Jason R. Searcy, P.C., Longview, TX, Trustee.

Daniel F. Dean, Daniel F. Dean, P.C., Palestine, TX, for defendant.

## MEMORANDUM OPINION

DONALD R. SHARP, Chief Judge.

The parties tried this adversary on stipulated facts, and the prior bankruptcy judge took the issue under advisement. Because the facts were stipulated, the issue is one of law. The Court certifies that the record has been reviewed and that the legal issues raised in the Motion to Reconsider may be resolved without prejudice to the parties. *Fed.R.Bankr.P. 9028.*

### Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the standing order of reference. Although the issue is not a core matter, the parties consented to resolution in this Court. *28 U.S.C. §§ 157(b)(3), (c)(2).*

### Findings of Fact

The Court adopts the stipulated facts, which are:

1. Jason Searcy, the Chapter 7 Trustee for Interdevelopment, Inc., ("Trustee") contends the bankruptcy estate is entitled to a price reduction from Roy Roger Conn and Ayako Conn (the "Conns").

2. On June 1, 1992, the Conns sold Esprit, "232.46+/-ACRES DESCRIBED IN ATTACHED SURVEY FIELD NOTES (See Exhibit A) Save and Except 7.66 acres Described in Attached Field Notes (See Exhibit "B")...." *(Court Exhibit A)* (hereinafter the "Property").

3. The Property was the same property that M.E. and Blance Alsobrook deeded to Roy R. Conn in February, 1974. All the deeds in evidence engraft the same survey note description.

4. The purchase price was $163,000.00.

5. The Property was subject to a deed of trust held by East Texas National Bank. As part of the sale agreement, Esprit assumed the remaining balance on Conn's note with East Texas National Bank *(Court Exhibits C and D)*.

6. On June 3, 1992, the Conns conveyed the Property to Esprit by acknowledging an Assumption Warranty Deed with Vendor's Lien *(Court Exhibit C).*

7. The Assumption Warranty Deed with Vendor's Lien includes "any discrepancies, conflicts or shortages in area or boundary lines" in the "Reservations from and Exceptions to Conveyance and Warranty" paragraph (the "Shortage in Area Clause").

8. The deed was accepted and executed by Boutiette, Esprit's president.

9. New surveys reveal that approximately fifty acres was not included in the conveyance.

10. On September 30, 1992, Esprit executed a quitclaim deed conveying the Property to Interdevelopment.

11. The payments on the assumed note were not timely made, and East Texas National Bank foreclosed on the Property on August 1, 1995.

12. On February 1, 1994, Interdevelopment executed a quitclaim deed in which it purported to convey the Property back to Esprit.

13. Esprit did not accept the Quitclaim from Interdevelopment back to Esprit. The only valid Quitclaim in the chain of title is the one from Esprit to Interdevelopment.

14. Interdevelopment alleges the Conns breached the warranty of title. *(Amended Complaint, D.E. 12, para. 9).*

### The Parties' Briefing

Conn contends the Shortage in Area Clause and the reference to 232.46 acres, more or less, bars recovery for the fifty acre discrepancy. Searcy, on behalf of the Interdevelopment estate, responds that the gross deficiency establishes mutual mistake either in law or in equity. He asserts, "[t]he measure of damages should be the value of the land represented versus the value of the land actually received." *(Searcy's Supplemental Stipulations/Theories and Nature of Relief Requested, filed January 9, 1997).*

### Analysis

■ In *Wheeler v. Boyd,* 69 Tex. 293, 6 S.W. 614 (Tex.1887), the Texas Supreme Court stated, "even in a case where the land is sold in gross, and the quantity stated in the conveyance is qualified by the words 'more or less' the purchaser will be relieved in equity if the deficiency is great." *Wheeler,* 6 S.W. at 617. Subsequently, the Supreme Court held that a variance of 13% or ⅛ was substantial as a matter of law, without consideration of intended use. *Bowen v. Briscoe,* 453 S.W.2d 287, 290 (Tex.1970).

■ The Conns respond that the "shortage in area" language nevertheless insulates the sale. It is true that none of the discovered or cited cases expressly discuss a "shortage in area" warranty exception. "Shortage in area" or survey exceptions clauses "prevent[] recovery against the title insurer in cases where the insured purchases less property than he or she thought had been purchased." P. Blake Keating and Joe A. Reinhardt, *The Title Insurance Survey Exemption Considered,* 49 J.Mo.B. 357, 358 (1993). A title company generally is charged with evaluating the deed records. If an insured wants greater title insurance coverage, then the insured has the option of spending more money to obtain survey coverage. *Id.* at 357–58, 363. When title companies are sued, courts generally enforce the "shortage in area" language. *E.g. Cook Consultants v. Larson,* 677 S.W.2d 718 (Tex.App.—Dallas 1984), *aff'd on this point,* 690 S.W.2d 567 (Tex.1985).

The Court concludes that Texas Supreme Court would not engraft the reasoning from "shortage in area" title company cases to warranty of title cases. The "shortage in area" exception is analogous to the "more or less" language. In an "in gross" sale, "more or less language" is enforced when a discrepancy is minimal. But when the real estate transaction greatly varies from the parties' expectations, the Texas Supreme Court charges the cost of that error to the party granting the warranty.

■ The discrepancy in this case is approximately 22% (50/224.8) of the conveyance that the Conns warranted. This quantity exceeds the ⅛ amount that the Supreme Court found problematic as a matter of law, so the Court will award damages. $35,860.00 represents 22% of the $163,000. In the absence of any other evidence, this amount best represents the difference between the value of the property believed to be conveyed and the value of the property received.